George D. MITCHELL, Jr., and (Mrs.)
Jodie Mitchell, Appellants,

v.

Benjamin F. WILLIAMS, d/b/a Williams
Funeral Home, Fordyce and Camden,
Arkansas, Appellee.

Nos. 19496, 19497.

United States Court of Appeals
Eighth Circuit.

Dec. 10, 1969.

David R. Munroe, Little Rock, Ark., for appellants; Christopher C. Mercer, Little Rock, Ark., on the brief.

Allen P. Roberts, Camden, Ark., for appellee; Walter H. Laney, Jr., Camden, Ark., on the brief.

Before MATTHES, GIBSON and BRIGHT, Circuit Judges.

BRIGHT, Circuit Judge.

George D. Mitchell, Jr., and his wife, Jodie Mitchell, separately sought recovery of unpaid minimum wages, overtime compensation, liquidated damages, attorney's fees and costs under the provisions of the Fair Labor Standards Act of 1938, as amended through 1961,[1] from their former employer, Benjamin F. Williams. The Mitchells appeal from dismissals of their consolidated actions tried by the court.

The trial court found that George Mitchell served as an administrative, executive or professional employee and, as such, was exempted from the minimum wage and maximum hour provisions of the law. The trial court also found that Mrs. Mitchell presented insufficient evidence to recover under the said Act. We consider only whether the trial court erred in its determination of these issues.[2]

The evidence, largely undisputed, discloses that the employer, Williams, hired George Mitchell to operate a combination funeral home and ambulance service located at Fordyce, Arkansas. The employer owned two similar establishments, one located at Arkadelphia and one at Camden, Arkansas. Mr. Mitchell worked as embalmer, ambulance driver, funeral director and general manager at the Fordyce home from November, 1963, to March, 1966. As such, he conducted about four funerals per month, supplied ambulance service for the Negro population in the Fordyce vicinity and operated a burial association (burial insurance) in connection with the funeral home. He claimed he served his employer twenty-four hours a day, seven days a week.

Mrs. Mitchell began working at the funeral home in about March of 1964. She portrayed her role as secretary, clerk, collector of burial insurance premiums, cleaning lady and hair dresser. Though she claimed to have worked for two years, her testimony of daily and weekly hours of employment lacked detail. She testified that her working hours were about eight hours, off and on, during the day.

The employer, Benjamin Williams, testified that he never employed Mrs. Mitchell, but he carried her on his books as an employee at Mr. Mitchell's request

---

1. 29 U.S.C. §§ 206, 207 and 216(b). The effect of amendments to these sections passed in 1966 are not involved in this case.

2. On oral argument, appellee suggested that the funeral home had engaged in retail transactions of a limited gross dollar volume derived in substantial part from intrastate activity and, as such, its employees were exempt from the minimum wage provisions of the Act. The requirements for this exemption are specified in 29 U.S.C. § 213(a) (2) (i) and (iv). Defendant's failure to plead such exemption as an affirmative defense bars us from its consideration. Wirtz v. C & P Shoe Corp., 336 F.2d 21 (5th Cir. 1964); Sams v. Beckworth, 261 F.2d 889 (5th Cir. 1958); Beechwood Lumber Co. v. Tobin, 199 F.2d 878 (5th Cir. 1952); Mid-Continent Petroleum Corp. v. Keen, 157 F.2d 310 (8th Cir. 1946); Schmidtke v. Conesa, 141 F.2d 634 (1st Cir. 1944). Moreover, this record contains insufficient data to determine whether the employer qualifies for the exemption.

to accumulate social security credits.[3] However, Williams knew that she performed some services at the funeral home. He divided the Mitchells' earnings on his records; $45.00 per week to Mr. Mitchell, $15.00 per week to Mrs. Mitchell, increased to $60.00 and $20.00 per week, respectively, from September, 1965, until termination in March, 1966.

In addition to that weekly salary, Williams provided the Mitchells with living quarters on the second floor of the funeral home which were reasonably valued at $90.00 per month. Mrs. Mitchell earned additional compensation for dressing hair on deceased women. The Mitchells retained proceeds of a soft drink vending machine located in the funeral home and the first premium that he or she collected on new burial insurance policies offered through the home.

■ Mr. Mitchell contends that he is not within the administrative, executive or professional employee exemption relied upon by the trial court for dismissal of his claim. We agree.

■ Generally, 29 U.S.C. § 213(a) (1) exempts from coverage bona fide executive, administrative or professional employees, as those terms are defined and delimited by regulations promulgated by the Secretary of Labor. The criteria provided by regulations are absolute and the employer must prove that any particular employee meets every requirement before the employee will be deprived of the protection of the Act. Wirtz v. C & P Shoe Corp., 336 F.2d 21 (5th Cir. 1964). One requirement specifies that the employer provide his employee compensation of at least $100.00 per week ($115.00 per week for a professional), exclusive of board, lodging or other facilities. 29 C.F.R. §§ 541.1(f), 541.117(a), 541.2(e) (1), 541.211(a). See 29 C.F.R. §§ 541.3(e), 541.311(a).

Mr. Mitchell's weekly cash compensation was substantially less than that specified by the regulations. Accordingly, the trial court erred in allowing the assertion of the exemption to defeat his claim. See Wirtz v. Mississippi Publishers Corp., 364 F.2d 603 (5th Cir. 1966); Kupperman v. M & J Becker, Inc., 198 F.2d 765, 40 A.L.R.2d 324 (2d Cir. 1952); Walling v. Yeakley, 140 F.2d 830 (10th Cir., 1944).

■ The employer argues that "exclusive" and its equivalent phrase "free and clear" as used in the regulations [4] means that when board, lodging or other facilities inure solely to the benefit of the employee, "free and clear" of any obligation to rebate any part thereof to the employer, the value of those items may be regarded as compensation for determining the applicability of the exemption. That argument is without merit. The term "exclusive of board, lodging or other facilities" means precisely what it says. See Wirtz v. Mississippi Publishers Corp., *supra*.

While noting the impreciseness of Mrs. Mitchell's testimony relating to the total hours she worked, the trial court based dismissal of her claim on the absence of any evidence establishing the amount of her earnings derived from the operation of the vending machine and from her collections of the initial premiums from new applicants for burial insurance benefits. Without information on these proceeds, the trial court thought it was impossible to determine whether the employer had paid Mrs. Mitchell less than the minimum wages required by the Act.

■ Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946), requires courts to apply practical standards in evaluating

---

3. The trial court specifically found that she was an "employee" within the meaning of the Act. That finding cannot be said to be clearly erroneous. See 29 U.S.C. § 203(e) (g); Burry v. National Trailer Convoy, Inc., 338 F.2d 422 (6th Cir. 1964). Compare Barras v.

Salt River Valley Water Users' Ass'n, 249 F.2d 952 (9th Cir.), cert. denied, 355 U.S. 890, 78 S.Ct. 262, 2 L.Ed.2d 189 (1957); Shupe v. Day, 113 F.Supp. 949 (D.C.Va.1953).

4. See 29 C.F.R. § 531.35.

whether an employee's evidence justifies any recovery under the Act:

"An employee who brings suit under § 16(b) of the Act for unpaid minimum wages or unpaid overtime compensation, together with liquidated damages, has the burden of proving that he performed work for which he was not properly compensated. The remedial nature of this statute and the great public policy which it embodies, however, militate against making that burden an impossible hurdle for the employee. Due regard must be given to the fact that it is the employer who has the duty under § 11(c) of the Act to keep proper records of wages, hours and other conditions and practices of employment and who is in position to know and to produce the most probative facts concerning the nature and amount of work performed. Employees seldom keep such records themselves; even if they do, the records may be and frequently are untrustworthy. It is in this setting that a proper and fair standard must be erected for the employee to meet in carrying out his burden of proof.

\*  \*  \*  \*  \*  \*

[E]ven where the lack of accurate records grows out of a bona fide mistake as to whether certain activities or non-activities constitute work, the employer, having received the benefits of such work, cannot object to the payment for the work on the most accurate basis possible under the circumstances. Nor is such a result to be condemned by the rule that precludes the recovery of uncertain and speculative damages. \* \* \* It is enough under these circumstances if there is a basis for a reasonable inference as to the extent of the damages." 328 U.S. at 686–688, 66 S.Ct. at 1192.

█ Under the standards enunciated in *Mt. Clemens, supra,* we believe that Mrs. Mitchell presented sufficient evidence to the trial court for it to determine the merits of her claim. As previously noted, the employer, testifying from his records, said that Mrs. Mitchell had received weekly sums of $15.00 and $20.00 during the course of her employment. The trial court estimated extra compensation at $5.00 per week derived from her dressing of hair.

We note that burial insurance data had been forwarded to the home office by the Mitchells and presumably the amount of income they derived from retaining initial burial insurance premiums could have been computed from those records. However, the Mitchells' testimony indicated that the amount of money collected from either burial insurance premiums or from the operation of the vending machine on the premises was *de minimis*.[5] Assuming a forty-hour week,[6] Mrs. Mitchell received substantially less than the standard $50.00 minimum wage,[7] if we include $15.00 or $20.00 paid by her employer, $5.00 extra for hair dressing plus a fair allocation to her for the weekly value of the living

5. Neither Mr. nor Mrs. Mitchell produced records of these payments. Mrs. Mitchell testified that she occasionally received first premium payments of $.25 and $.60. Mr. Mitchell testified that he paid for the soft drinks supplied the vending machine.

6. Though the trial court made no finding of Mrs. Mitchell's weekly working hours, it assumed a forty-hour work week preliminary to considering whether Mrs. Mitchell proved that she had been undercompensated.

7. The minimum wage requirements for the period in question are contained in 29 U.S.C. §§ 206(a) (1) and 206(b) (1).

Under § 206(a) (1), Mrs. Mitchell, as an employee engaged in commerce, would have been entitled to compensation at a rate of $1.25 per hour for the entire term of her employment. If Mrs. Mitchell were regarded as an employee of an "enterprise" engaged in commerce, as defined by § 203(s), and not individually covered under § 206(b) (1), she would have been entitled to compensation at a rate of $1.00 per hour from March, 1964, through September, 1964; at a rate of $1.15 per hour from September, 1964, through September, 1965; and at a rate of $1.25 from September, 1965, until the termination of her employment in March, 1966.

quarters which a fact finder might include as part of her earnings.[8] Of course, the number of hours Mrs. Mitchell actually worked is a matter of fact that must be determined by the trial court.

The trial court should make such additional findings as may be necessary for the resolution of Mrs. Mitchell's claim on its merits including wages, hours, and such other matters as the court may deem appropriate for its consideration.[9] The trial court, on remand, may rely on this record or permit the parties to submit additional evidence.

We vacate the dismissal in each action and remand these cases to the trial court for further proceedings in accordance with this opinion.

8. Although "wages" as defined in 29 U.S. C. § 203(m) may include board, lodging, or other facilities customarily furnished by an employer to his employee, and the employer in this case provided the Mitchell family with quarters valued at approximately $90.00 per month, we do not determine whether the value of the lodgings is attributable to Mr. Mitchell, Mrs. Mitchell, or allocable to both.

9. The appellants submitted no evidence that Williams' Fordyce home or all of his funeral homes produced sufficient dollar volume for enterprise coverage. See §§ 203(s), 206(b), 207(a) (2). Coverage otherwise under the Act focuses on the employee's activities, whether he or she is engaged in commerce or in the production of goods for commerce. Coverage is both a jurisdictional and substantive issue. See Bledsoe v. Wirtz, 384 F.2d 767 (10th Cir. 1967). Also see (for ambulance service employees) Wirtz v. A–1 Ambulance Service, Inc., 299 F. Supp. 197 (D.C.Ark.1969); Kelly v. Ballard, 298 F.Supp. 1301 (D.C.Cal. 1969); Duffy v. Oele, 274 F.Supp. 307 (D.C.Mich.1967); (insurance company employees) Wirtz v. First State Abstract & Ins. Co., 362 F.2d 83 (8th Cir. 1966); (funeral home employees in interstate activity) Smith v. Taylor, 375 F.2d 1000 (5th Cir. 1967)—(intrastate activity) Gilreath v. Daniel Funeral Home, Inc., 18 W.H.Cases 514, 516 (D.C.Ark.1968), affirmed, 421 F.2d 504 (8th Cir., February 3, 1970).