**Anand PRAKASH, Appellant,**

v.

**AMERICAN UNIVERSITY, et al.**

No. 82–1788.

United States Court of Appeals, District of Columbia Circuit.

Argued March 10, 1983.

Decided Feb. 10, 1984.

Anand Prakash, pro se.

Hugh B. Gordon, Washington, D.C., with whom Anthony C. Morella and William F. Causey, Washington, D.C., were on brief, for appellees.

Before ROBINSON, Chief Judge, TAMM, Circuit Judge, and GORDON,[*] Senior District Judge.

Opinion for the Court filed by Chief Judge SPOTTSWOOD W. ROBINSON, III.

SPOTTSWOOD W. ROBINSON, III, Chief Judge:

This appeal marks the second occasion upon which Anand Prakash has appeared before this court to litigate questions emanating from the termination of his appointment as a professor in the Physics Department of The American University.[1] Still maintaining that the University breached a contract to employ him permanently, Prakash asserts entitlement to minimum and overtime wages under the Fair Labor Standards Act[2] and damages under local law, which allegedly the University has wrongfully withheld from him.[3] The District Court entered a summary judgment dismissing Prakash's action, ruling that he was outside the coverage of the Act,[4] and that no jurisdictional basis for consideration of his nonfederal claims existed.[5] We find that Prakash made out a colorable case of inclusion within the Act, and resultantly that the District Court has pendent jurisdiction to entertain his local-law contentions. Accordingly, we reverse the District Court's judgment and remand for further consideration.

I

█ It cannot be said at this point in the litigation that Prakash necessarily lacks the protection of the Fair Labor Standards Act. Section 13(a)(1) of the Act exempts from coverage of the minimum wage and overtime provisions[6] anyone employed in a "bona fide ... professional capacity," as defined in regulations promulgated by the Secretary of Labor.[7] The regulations prescribe five conditions to a finding of em-

---

[*] Of the United States District Court for the Western District of Kentucky, sitting by designation pursuant to 28 U.S.C. § 294(d) (1976).

1. On his first appeal, we affirmed the District Court's dismissal of claims asserted by him pursuant to 42 U.S.C. § 1981 (1976) and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000(e) et seq. (1976), and remanded his federally-based wage and locally-based damage claims to the District Court for further consideration. Prakash v. American Univ., 652 F.2d 196 (D.C.Cir.1981) (judgment and memorandum).

2. Pub.L. No. 85-231 (1957), 52 Stat. 1060 (1938), codified as amended, 29 U.S.C. §§ 201 et seq. (Supp. V 1981).

3. Prakash alleges that in 1976 he performed regular work for 1,192 hours and overtime work for 1,036 hours, and thereby accumulated regular minimum wages of $2,622.40 and overtime wages of $3,315.20—a total of $5,937.60, of which the University paid him only $18.90, leaving an unpaid balance of $5,918.70 for 1976. First Amended Complaint (following remand), filed May 19, 1981, ¶¶ 19–22 at 5, Prakash v. American Univ., Civ. No. 78–2294 (D.D.C.), Record on Appeal (R.) 88 [hereinafter cited as Amended Complaint]. Prakash further alleges that in 1977 he worked for the University for 1,200 regular hours and 1,120 overtime hours, by reason of which he became entitled to $2,760 in regular minimum wages and $3,864 in overtime wages, for a total of an additional $6,624. Amended Complaint, supra, ¶ 23 at 5, R. 88. The University states that it paid Prakash $2,520 for his 1977 efforts, leaving in dispute a balance of $4,104 in unpaid wages for that year. Amended Complaint, supra, ¶ 24 at 5, R. 88. Thus, the total of the unpaid wages assertedly due Prakash for 1976 and 1977 is $10,022.70. In addition to these federally-based wage claims, Prakash presses, as we have said, several common-law causes of action for damages.

4. Prakash v. American Univ., Civ. No. 78–2294 (D.D.C. June 14, 1982) (memorandum), at 3–4.

5. Id. at 2–3.

6. See 29 U.S.C. §§ 206, 207 (Supp. V 1981).

7. Id. § 213(a)(1) (Supp. V 1981).

ployment in that capacity,[8] each of which must be met to establish the exemption.[9] In applying these regulatory standards, the District Court apparently concluded that Prakash, an academic physicist, satisfied the first four conditions,[10] but the court declined to determine whether, in fulfillment of the fifth, Prakash was paid at or above the rate of $170 per week.[11] Instead, the court held the requirement of a threshold weekly wage invalid as "an 'arbitrary and fanciful classification of professional status'"[12] and inconsistent with the "plain meaning" of the Act.[13]

We do not agree. Congress expressly authorized the Secretary to "defin[e] and delimit" the term "bona fide ... profes-

sional."[14] and, acting pursuant to this delegation, the Secretary conducted hearings in 1940 to assist his response.[15] A minimum-wage requirement in the regulatory definition was applauded by employers participating in the hearings as "a valuable and easily applied index to the 'bona fide' character for which exemption is claimed."[16] Employers felt, and the Secretary agreed, that the salary paid the employee was "the best single test of the employer's good faith in characterizing the employment."[17] We thus conclude that the Secretary, in imposing the minimum-wage condition, "acted within the statutory bounds of his authority, and that his choice among possible alternative standards ... is one which a rational person could have made."[18] Accordingly,

---

**8.** 29 C.F.R. § 541.3 (1983) provides in relevant part:

The term "employee employed in a bona fide ... professional capacity" in section 13(a)(1) of the act shall mean any employee:

(a) Whose primary duty consists of the performance of:

(1) Work requiring knowledge of an advance type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study, as distinguished from a general academic education and from an apprenticeship, and from training in the performance of routine mental, manual, or physical processes, or....

(3) Teaching, tutoring, instructing, or lecturing in the activity of imparting knowledge and who is employed and engaged in this activity as a teacher in the school system or educational establishment or institution by which he is employed; and

(b) Whose work requires the consistent exercise of discretion and judgment in its performance; and

(c) Whose work is predominantly intellectual and varied in character (as opposed to routine mental, manual, mechanical, or physical work) and is of such character that the output produced or the result accomplished cannot be standardized in relation to a given period of time; and

(d) Who does not devote more than 20 percent of his hours worked in the workweek to activities which are not an essential part of and necessarily incident to the work described in paragraphs (a) through (c) of this section; and

(e) Who is compensated for services on a salary or fee basis at a rate of not less than $170 per week ($150 per week, if employed by other than the Federal Government in

Puerto Rico, the Virgin Islands, or American Samoa), exclusive of board, lodging, or other facilities....

**9.** 29 C.F.R. §§ 541.301–541.313 (1983). See *Walling v. General Indus. Co.,* 330 U.S. 545, 547, 67 S.Ct. 883, 884, 91 L.Ed. 1088, 1090 (1947); *Wirtz v. C & P Shoe Corp.,* 336 F.2d 21, 27 (5th Cir.1964); *Mitchell v. Williams,* 420 F.2d 67, 69 (8th Cir.1969); *Hodgson v. Barge, Waggoner & Sumner, Inc.,* 377 F.Supp. 842, 844 (M.D.Tenn.1972), *aff'd per curiam,* 477 F.2d 598 (6th Cir.1973).

**10.** See *Prakash v. American Univ., supra* note 4, at 3.

**11.** See note 8 *supra.*

**12.** *Prakash v. American Univ., supra* note 4, at 4, quoting *Krill v. Arma Corp.,* 76 F.Supp. 14, 17 (E.D.N.Y.1948).

**13.** *Prakash v. American Univ., supra* note 4, at 4.

**14.** 29 U.S.C. § 213(a) (Supp. V 1981).

**15.** See Report and Recommendations of the Presiding Officer on Proposed Amendments Regarding the Definition of the Terms "Executive, Administrative, Professional ... Outside Salesman," 2 CCH Lab. Cas. ¶ 31,302.29 at 31,317 (3d ed. 1940).

**16.** *Id.* ¶ 31,302.30 at 31,319.

**17.** *Id.* ¶ 31,302.65 at 31,333.

**18.** *Federal Sec. Adm'r v. Quaker Oats Co.,* 318 U.S. 218, 233, 63 S.Ct. 589, 598, 87 L.Ed. 724, 733 (1943).

we hold, in common with many other courts,[19] that this requirement is valid.[20]

We must, then, return the case to the District Court for consideration of Prakash's minimum-wage and overtime claims under the provisions of the Act. On remand, the University will have the burden of proving that Prakash was employed in a bona fide professional capacity, and therefore was exempted from the Act's coverage.[21] We caution that this exemption is to be construed narrowly,[22] and that the University must demonstrate that Prakash's employment met each of its five demands;[23] perhaps most importantly, the University must show that Prakash was compensated at the rate of at least $170 per week. The District Court must, of course, make such additional findings as may be necessary for full resolution of Prakash's claims on the record as it exists or as it may be augmented by evidence.

## II

■ Prakash's common-law bases for relief include breach of contract, interference with contractual relations, conversion, deceit and defamation. He presses these theories of recovery against the University, which is operated in the District of Columbia, and individually against two officers of the University who are domiciliaries of Maryland. Since, from the beginning of the litigation, Prakash has acknowledged a residence in Maryland,[24] diversity of citizenship as a basis for federal jurisdiction has been uncertain.[25] Prakash more fully describes himself, however, as "a citizen of the United States with a temporary resi-

19. So far as we can ascertain, every court considering this aspect of the regulation has found it an appropriate exercise of the authority statutorily-conferred upon the Secretary. *Helliwell v. Haberman,* 140 F.2d 833, 834 (2d Cir.1944); *Wirtz v. Mississippi Publishers Corp.,* 364 F.2d 603, 608 (5th Cir.1966); *Mitchell v. Williams, supra* note 9, 420 F.2d at 69; *Craig v. Far West Eng'g Co.,* 265 F.2d 251, 259–260 (9th Cir.), *cert. denied,* 361 U.S. 816, 80 S.Ct. 57, 4 L.Ed.2d 63 (1959); *Walling v. Yeakley,* 140 F.2d 830, 832 (10th Cir.1944); *Retail Store Employees Union v. Drug Fair-Community Drug Co.,* 307 F.Supp. 473, 476 (D.D.C.1969); *Marshall v. Hendersonville Bowling Center,* 483 F.Supp. 510, 517 (M.D.Tenn.1980), *aff'd,* 672 F.2d 917 (6th Cir.1981); *Hodgson v. Barge, Waggoner & Sumner, Inc., supra* note 9, 377 F.Supp. at 844.

20. Indeed, the University's brief acknowledges the validity of the minimum-wage condition. Brief for Appellees at 20–21. During oral argument, University counsel, responding to a direct question from the bench, stated that the University did not support the District Court's ruling, but argued that Prakash was exempt from coverage of the Act.

21. *Idaho Sheet Metal Works, Inc. v. Wirtz,* 383 U.S. 190, 206, 86 S.Ct. 737, 747, 15 L.Ed.2d 694, 704 (1966); *Arnold v. Ben Kanowsky, Inc.,* 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393, 396 (1960); *Walling v. General Indus. Co., supra* note 9, 330 U.S. at 547–548, 67 S.Ct. at 884, 91 L.Ed. at 1090.

22. See, *e.g., Mitchell v. Kentucky Fin. Co.,* 359 U.S. 290, 295, 79 S.Ct. 756, 759–760, 3 L.Ed.2d 815, 819 (1959); *Hodgson v. Elk Garden Corp.,* 482 F.2d 529, 531 (4th Cir.1973); *Usery v.*

*Yates,* 565 F.2d 93, 97 (6th Cir.1977); *Marshall v. Woods Hole Oceanographic Inst.,* 458 F.Supp. 709, 719 (D.Mass.1978).

23. See notes 8–9 *supra* and accompanying text.

24. Prakash's initial complaint stated that he was a "male citizen of the United States and a resident of the State of Maryland," and gave a Bethesda, Maryland, address. Complaint, filed Dec. 6, 1978, ¶ 2, *Prakash v. American Univ., supra* note 3, R. 1. The issue on diversity made its appearance when he later amended the complaint to add the two Maryland individuals as defendants. R. 2. The defendants moved to dismiss the action, R. 63, and their motion was granted. *Prakash v. American Univ.,* Civ. No. 78–2294 (D.D.C. Nov. 19, 1979) (order). On the prior appeal, we noted that Prakash had not alleged diversity adequately, *Prakash v. American Univ., supra* note 1, memorandum at 4, but remanded the case to the District Court with instructions to afford Prakash the "opportunity to frame an amended complaint prior to final consideration and disposition of his action." *Id.* at 5. Prakash then amended his complaint again.

25. Federal diversity jurisdiction is lacking if there are any litigants from the same state on opposing sides. *American Fire & Cas. Co. v. Finn,* 341 U.S. 6, 17, 71 S.Ct. 534, 541–542, 95 L.Ed. 702, 710 (1951); *Smith v. Sperling,* 354 U.S. 91, 93, 77 S.Ct. 1112, 1114, 1 L.Ed.2d 1205, 1209 (1957); *Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806); *Park v. Didden,* 225 U.S.App.D.C. 4, 8, 695 F.2d 626, 630 (1982); *Verhouvsek v. Degraffin,* 554 F.Supp. 344 (D.D.C.1983).

dence in the State of Maryland and a permanent domicile in the State of Pennsylvania." [26]

Following our earlier remand, Prakash, in support of diversity jurisdiction, submitted numerous documents [27] to the District Court in an effort to establish a Pennsylvania domicile at the time he sued.[28] Without any sort of hearing on the issue, the District Court held that Prakash planned to remain in Maryland indefinitely.[29] The court stated that "[t]he entire scenario of this case is, on its face, inconsistent with an intent to return to Pennsylvania," [30] and that "[a]part from [Prakash's] bald allegations of intent to return to Pennsylvania ... there is no manifest pattern in his movements indicating that he treated Pittsburgh as his home base at the time of suit." [31] The court felt also that Prakash's original litigative objective undercut his assertion of a Pennsylvania domicile. His insistence that the University had dishonored a contract of permanent employment, and his effort to gain reinstatement at the University in a tenured position, were taken as indications that he did not intend to return to Pennsylvania.[32] The court thus concluded, simply on the paper record before it, that Prakash had not made out a Pennsylvania domicile, and therefore could not demonstrate diversity of citizenship.[33]

We are unable to sustain the court's ruling on the diversity issue. In the first place, we cannot subscribe to the procedures the court utilized in determining that diversity was lacking. When subject-matter jurisdiction is questioned, the court must, of course, satisfy itself of its authority to hear the case,[34] and in so doing, it may resolve factual disputes.[35] The court has considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction,[36] and normally it

**26.** Amended Complaint, *supra* note 3, at 1, R. 88, listing a Pittsburgh, Pennsylvania, address for Prakash.

**27.** Included were copies of his 1978 federal and Pennsylvania income tax returns listing a Pittsburgh, Pennsylvania, address; his 1977 Form W–2 wage statement from the University; a bill of lading evidencing a shipment of household goods from Ithaca, New York, to Pittsburgh in August, 1978; a related damage settlement sent by the movers to his Pittsburgh address; and an affidavit from his Bethesda landlord stating that Prakash's visits from the fall of 1978 to the summer of 1981 were "very infrequent and the duration of stay on each [was] for only a few days. He comes here from his home in Pittsburgh, Pennsylvania about once in two months...." R. 107.

**28.** Diversity of citizenship must exist when the action is brought—here 1978—and not when the cause of action arose. *Smith v. Sperling,* *supra* note 25, 354 U.S. at 93 n. 1, 77 S.Ct. at 1113 n. 1, 1 L.Ed.2d at 1209 n. 1; *Hawes v. Club Ecuestre El Comandante,* 598 F.2d 698, 703 (1st Cir.1979); *Ray v. Bird & Son,* 519 F.2d 1081, 1082 (5th Cir.1975).

**29.** *Prakash v. American Univ.,* *supra* note 4, at 2.

**30.** *Id.*

**31.** *Id.*

**32.** *Id.*

**33.** *Id.* at 3.

**34.** *Gordon v. National Youth Work Alliance,* 218 U.S.App.D.C. 337, 344, 675 F.2d 356, 363 (1982) (concurring opinion); *Bernstein v. Universal Pictures, Inc.,* 517 F.2d 976, 979 (2d Cir.1975); *Mortensen v. First Fed'l Savs. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977); *Green v. Forney Eng'g Co.,* 589 F.2d 243, 246 (5th Cir.1979). The court need not wait for a party to raise a jurisdictional issue; instead, the court should, *sua sponte,* inquire into the basis for its jurisdiction. *Gordon v. National Youth Work Alliance,* *supra,* 218 U.S.App.D.C. at 343 n. 11, 675 F.2d at 362 n. 11; *Bernstein v. Universal Pictures, Inc.,* *supra,* 517 F.2d at 979; *Pacific Towboat & Salvage Co. v. ICC,* 620 F.2d 727, 729 (9th Cir.1980); Fed.R.Civ.P. 12(h)(3) (court must dismiss action whenever it appears, by suggestion of parties or otherwise, that court lacks subject matter jurisdiction).

**35.** *Rosemound Sand & Gravel Co. v. Lambert Sand & Gravel Co.,* 469 F.2d 416, 418 (5th Cir.1972); *Berardinelli v. Castle & Cooke, Inc.,* 587 F.2d 37, 39 (9th Cir.1978); *Gough v. Rossmoor Corp.,* 487 F.2d 373, 377 (9th Cir. 1973); 10 C. Wright, A. Miller & M. Kane, Federal Practice § 2713 at 612 (2d ed. 1983).

**36.** *Land v. Dollar,* 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 1011 n. 4, 91 L.Ed. 1209, 1214 n. 4 (1947); *Gordon v. National Youth Work Alliance,* *supra* note 34, 218 U.S.App.D.C. at 344, 675 F.2d at 363; *Seth v. British Overseas Air Corp.,* 329 F.2d 302, 305 (1st Cir.), *cert. denied,*

may rely upon either written or oral evidence.[37] The court must, however, afford the nonmoving party "an ample opportunity to secure and present evidence relevant to the existence of jurisdiction."[38] That, we believe, was not fully done here.

■■■ When diversity of citizenship is the issue, the relevant evidence is that relating to the domiciles of the parties.[39] Domicile is determined by two factors: physical presence in a state, and intent to remain there for an unspecified or indefinite period of time.[40] In many instances, and perhaps in most, a party's intent will appear, at least in part, from facts established by documents. When, however, as here, a party expressly declares his intent, and the opposing written submissions do not demonstrate the falsity of the declaration with reasonable certainty, the issue necessarily becomes one of the declarant's credibility. In that event, the court cannot rest its decision simply on the paper record, but must hold a hearing in order to adequately assess credibility.[41] Only in that way is a sound decision on intent possible.[42]

379 U.S. 858, 85 S.Ct. 114, 13 L.Ed.2d 61 (1964); *Satz v. ITT Fin. Corp.,* 619 F.2d 738, 742 (8th Cir.1980).

**37.** *Gordon v. National Youth Work Alliance, supra* note 34, 218 U.S.App.D.C. at 344, 675 F.2d at 363; *Exchange Nat'l Bank v. Touche Ross & Co.,* 544 F.2d 1126, 1130–1131 (2d Cir. 1976); *Green v. Forney Eng'g Co., supra* note 34, 589 F.2d at 246; *Berardinelli v. Castle & Cooke, Inc., supra* note 35, 587 F.2d at 39. See also Fed.R.Civ.P. 43(e) ("[w]hen a motion is based on facts not appearing of record the court may hear the matter on affidavits presented by the respective parties, but the court may direct that the matter be heard wholly or partly on oral testimony or deposition").

**38.** *Gordon v. National Youth Work Alliance, supra* note 34, 218 U.S.App.D.C. at 344, 675 F.2d at 363; *Urquhart v. American-La France Foamite Corp.,* 79 U.S.App.D.C. 219, 221, 144 F.2d 542, 544, *cert. denied,* 323 U.S. 783, 65 S.Ct. 273, 89 L.Ed. 625 (1944); *Local 336, Am. Fed'n of Musicians v. Bonatz,* 475 F.2d 433, 437 (3d Cir.1973); *Cooper v. United States Penitentiary,* 433 F.2d 596, 597 (10th Cir.1970).

**39.** *Gilbert v. David,* 235 U.S. 561, 569, 35 S.Ct. 164, 166, 59 L.Ed. 360, 363 (1915); *Williamson v. Osenton,* 232 U.S. 619, 624, 34 S.Ct. 442, 442, 58 L.Ed. 758, 761 (1914); *Hawes v. Club Ecuestre El Comandante, supra* note 28, 598 F.2d at 701; *Great Cruz Bay, Inc. v. Wheatley,* 495 F.2d 301, 306 n. 7 (3d Cir.1974); *Mas v. Perry,* 489 F.2d 1396, 1399 (5th Cir.), *cert. denied,* 419 U.S. 842, 95 S.Ct. 74, 42 L.Ed.2d 70 (1974); *Stifel v. Hopkins,* 477 F.2d 1116, 1120 (6th Cir.1973); *Kantor v. Wellesley Galleries, Ltd.,* 704 F.2d 1088, 1090 (9th Cir.1983). 1 J. Moore, Federal Practice ¶ 0.74[3.–1] at 707.50; 13 C. Wright, A. Miller & E. Cooper, Federal Practice § 3611 at 697 (1975).

**40.** *Sun Printing & Publishing Ass'n v. Edwards,* 194 U.S. 377, 383, 24 S.Ct. 696, 698, 48 L.Ed. 1027, 1030 (1904); *Mitchell v. United States,* 88 U.S. (21 Wall.) 350, 353, 22 L.Ed. 584, 588

(1875); *Hawes v. Club Ecuestre El Comandante, supra* note 28, 598 F.2d at 701; *Mas v. Perry, supra* note 39, 489 F.2d at 1399; *Holmes v. Sopuch,* 639 F.2d 431, 433–434 (8th Cir. 1981); 13 C. Wright, A. Miller & E. Cooper, *supra* note 39, § 363 at 728–729.

**41.** *Williamson v. Tucker,* 645 F.2d 404, 414 (5th Cir.1981), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981) (on a motion attacking subject-matter jurisdiction, "the district court must give the plaintiff an opportunity for discovery and for a hearing that is appropriate to the nature of the motion to dismiss"). See also *Local 336, Am. Fed'n of Musicians v. Bonatz, supra* note 38, 475 F.2d at 437–438; *Topping v. Fry,* 147 F.2d 715, 718 (7th Cir.1945); *Harmon v. Superior Ct.,* 307 F.2d 796, 797 (9th Cir.1962); *Tselentis v. Michalinos Maritime & Commercial Co.,* 104 F.Supp. 942, 945 (S.D.N.Y.1952). *Cf. Tanzymore v. Bethlehem Steel Corp.,* 457 F.2d 1320, 1323 (3d Cir.1972) (hearing to resolve conflict over diversity might have been appropriate if any part of plaintiff's deposition had supported plaintiff's conclusory statement of domicile).

**42.** *Autera v. Robinson,* 136 U.S.App.D.C. 216, 419 F.2d 1197 (1969). There the District Court disposed of a motion solely on affidavits and statements made by the parties' counsel. We acknowledged the trial judge's broad discretion to decide whether to hear oral testimony on a motion. *Id.* at 221, 419 F.2d at 1202. See also note 36 *supra* and accompanying text. Nonetheless, we reversed the District Court's ruling because the motion required resolution of a factual dispute between the parties. We said that the District Court's finding on the disputed issue of fact without the benefit of oral testimony

was, as it had to be, the product of a selection unbenefited by built-in aids to a discriminating choice. The opportunity to judge credibility was nonexistent as to the absent affiants; the opportunity to probe by cross-examination was completely lacking. With-

As we mentioned earlier,[43] the District Court did not conduct an evidentiary hearing; instead, it relied solely upon documents submitted by the parties in finding that Prakash lacked the intent essential to domicile in Pennsylvania. The court noted two factors that convinced it that Prakash did not plan to return to Pennsylvania. The first was that Prakash, "a renowned physics professor, [had] moved from one university town to the next and lived in several states."[44] It does not strike us as unusual, however, for a professor, particularly one who is recognized as a scholar, to spend time during the course of his career at academic institutions variously located about the country. The mere fact of the academician's movement from one institution to another thus cannot provide reliable evidence of a determination not to return to a particular place and remain there for an indeterminate period of time. The second factor influencing the District Court was that Prakash in his complaint sought both reinstatement and tenure at American University.[45] Again, Prakash's desire for a tenured position at the University, while warranting consideration in determinations on

intent, is hardly potent evidence that he did not mean eventually to return to and remain in Pennsylvania indefinitely. At the very least, each of the two factors relied upon by the court had to be weighed against Prakash's unequivocal declaration of the intent that makes for domicile in Pennsylvania, and with that the issue necessarily became one of Prakash's credibility. An evidentiary hearing, therefore, was necessary to resolve suitably the question of Prakash's intent, and the District Court should not have undertaken to settle that question on the documents alone.

We encounter another problem deserving comment. Even if the District Court had proceeded properly in finding diversity of citizenship wanting, it still should not have granted summary judgment on that account. Lack of diverse citizenship is not ground for an award of summary judgment.[46] If a court finds that diversity does not exist, it must, absent another basis for federal jurisdiction, dismiss the case under Civil Rule 12(b)(1)[47] rather than award summary judgment under Rule 56.[48] A summary judgment is a

out these twin tools, normal in the trial of factual issues, the factual conclusion was certain to take on an unaccustomed quality of artificiality.

*Id.* Accord, *Murray v. Kunzig,* 149 U.S.App. D.C. 256, 264, 462 F.2d 871, 879 (1972), *rev'd on other grounds sub nom. Sampson v. Murray,* 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974) (approving District Court's requirement of oral testimony where facts pertinent to motion for preliminary injunction were in issue). See also *Dopp v. Franklin Nat'l Bank,* 461 F.2d 873, 879 (2d Cir.1972) (where factual dispute existed on motion for preliminary injunction, "an evidentiary hearing was essential to resolve the credibility gap"); *Carter-Wallace, Inc. v. Davis-Edwards Pharmacal Corp.,* 443 F.2d 867, 872 n. 5 (2d Cir.1971) (same); *SEC v. Frank,* 388 F.2d 486, 490–492 (2d Cir.1968) (same); *Warner Bros. Pictures Inc. v. Gittone,* 110 F.2d 292, 293 (3d Cir.1940) (*per curiam*) (same); *Playboy Enterprises, Inc. v. Chuckleberry Publishing Inc.,* 486 F.Supp. 414, 433 (S.D.N.Y.1980) (same).

**43.** See text *supra* at notes 27–33.

**44.** *Prakash v. American Univ., supra* note 4, at 2.

**45.** *Id.*

**46.** *Riley v. Titus,* 89 U.S.App.D.C. 79, 81 n. 1, 190 F.2d 653, 655 n. 1, *cert. denied,* 342 U.S. 855, 72 S.Ct. 82, 96 L.Ed. 644 (1951); *Heyward v. Public Hous. Adm'r,* 238 F.2d 689, 694–695 (5th Cir.1956); *Stanley v. CIA,* 639 F.2d 1146, 1157 (5th Cir.1981); *Rosemound Sand & Gravel Co. v. Lambert Sand & Gravel Co., supra* note 35, 469 F.2d at 417–418; 10 C. Wright, A. Miller & M. Kane, *supra* note 35, § 2713 at 608, 610–611.

**47.** Fed.R.Civ.P. 12(b)(1), stating in pertinent part:

Every defense in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter....

**48.** Fed.R.Civ.P. 56 provides relevantly that either the claimant or the defending party "may ... move with or without supporting affidavits for a summary judgment as to all or any part" of the claims, counterclaims or cross-claims presented.

ruling on the merits of the case [49] predicated upon a determination that there are no material issues of fact that necessitate trial.[50] As a decision on the merits, a summary judgment merges or bars the action for res judicata purposes.[51] A dismissal for lack of subject-matter jurisdiction, on the other hand, is not a disposition on the merits [52] and consequently does not have res judicata effect.[53] A litigant whose action is dismissed for lack of diversity, therefore, subsequently may refile the action in an appropriate forum.[54] Thus, even if the District Court had proceeded correctly in finding an absence of diversity, it should have dismissed the case in lieu of a grant of summary judgment.

## III

▮ We must, then, reverse the District Court's ruling on diversity, and ordinarily we would direct reconsideration of the matter. There is, however, an alternative course open to the court as a byproduct of our holding that Prakash is entitled to litigate his minimum-wage and overtime claims. Those claims "aris[e] under the . . . laws . . . of the United States" [55]—the provisions of the Fair Labor Standards Act— the District Court clearly has jurisdiction to consider them.[56] It follows that the court also has power to entertain Prakash's local-law claims as a matter of pendent jurisdiction. It follows, too, that should the court decide to exercise pendent jurisdiction over the latter claims, the diversity issue would become academic.

▮ The doctrine of pendent jurisdiction enables a district court, incidentally to its authority to adjudicate federal claims properly before it, to also pass on related non-federal claims of which it could not take cognizance were they presented alone.[57] When federal and nonfederal claims arise from a "common nucleus of operative fact" [58] and the federal claim has "substance," [59] the court may decide the

---

**49.** *Hoke v. Retail Credit Corp.,* 521 F.2d 1079, 1081 n. 3 (4th Cir.1975), *cert. denied,* 423 U.S. 1087, 96 S.Ct. 878, 47 L.Ed.2d 98 (1976); *Tuley v. Heyd,* 482 F.2d 590, 594 n. 2 (5th Cir.1973); 10 C. Wright, A. Miller & M. Kane, *supra* note 35, § 2712 at 584, § 2713 at 612.

**50.** Under Fed.R.Civ.P. 56(c), the court must render judgment "forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See also 10 C. Wright, A. Miller & M. Kane, *supra* note 35, § 2712 at 574–578, § 2713 at 612–613.

**51.** *Weston Funding Corp. v. Lafayette Towers, Inc.,* 550 F.2d 710, 714 (2d Cir.1977); *Martucci v. Mayer,* 210 F.2d 259, 260 (3d Cir.1954); *Tuley v. Heyd, supra* note 49, 482 F.2d at 594 n. 2; 10 C. Wright, A. Miller & M. Kane, *supra* note 35, § 2712 at 584–585.

**52.** *Riley v. Titus, supra* note 46, 89 U.S.App.D.C. at 81 n. 1, 190 F.2d at 655 n. 1; *Stanley v. CIA, supra* note 46, 639 F.2d at 1157; *Topping v. Fry, supra* note 41, 147 F.2d at 717; *Williams v. Minnesota Mining & Mfg. Co.,* 14 F.R.D. 1, 8 (S.D.Cal.1953); 5 C. Wright & A. Miller, Federal Practice, § 1350 at 554 (1969).

**53.** *Tyler Gas Serv. Co. v. FPC,* 101 U.S.App.D.C. 184, 188, 247 F.2d 590, 594, *cert. denied,* 355 U.S. 895, 78 S.Ct. 263, 2 L.Ed.2d 193

(1957); *Wade v. Rogala,* 270 F.2d 280, 282 (3d Cir.1959); *Williams v. Minnesota Mining & Mfg. Co., supra* note 52, 14 F.R.D. at 8.

**54.** *Williams v. Minnesota Mining & Mfg. Co., supra* note 52, 14 F.R.D. at 8.

**55.** 28 U.S.C. § 1331 (Supp. V 1981).

**56.** See *id.*

**57.** *Moor v. County of Alameda,* 411 U.S. 693, 711–712, 93 S.Ct. 1785, 1796–1797, 36 L.Ed.2d 596, 610–611 (1973). See also *Tuck v. Pan Am. Health Org.,* 215 U.S.App.D.C. 201, 203, 668 F.2d 547, 549 (1981).

**58.** *UMW v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218, 228 (1966).

**59.** *Id.* See also *United States v. Kember,* 222 U.S.App.D.C. 1, 4, 685 F.2d 451, 454, *cert. denied,* 459 U.S. 832, 103 S.Ct. 73, 74 L.Ed.2d 72 (1982); *Spivey v. Barry,* 214 U.S.App.D.C. 404, 410, 665 F.2d 1222, 1228 (1981). The Supreme Court has made clear that a claim is insubstantial for jurisdictional purposes only if "'its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy.'" *Hagans v. Lavine,* 415 U.S. 528, 538, 94 S.Ct. 1372, 1379, 39 L.Ed.2d 577, 588 (1974), quoting *Hannis Distill-*

nonfederal claims, without need for an independent basis of federal jurisdiction.[60] To say, however, that there is *power* to hear the pendent claim is not to say that the court *must* hear it. On the contrary, "[i]t has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants." [61]

The case at bar calls for serious consideration in light of these principles.[62] The federal and nonfederal claims Prakash advances "derive from a common nucleus of operative fact"—Prakash's contract dispute with the University—and we have already found that the federal claims—those predicated on the Fair Labor Standards Act—have "substance." [63] Convenience and economy may well favor an exercise of pendent jurisdiction; any discovery conducted on the federal issues might aid a gathering of facts relevant to local-law issues, and perhaps enough could comfortably be tried in a single proceeding to enable a just disposition of the entire controversy. We are mindful that expediency must be juxtaposed against possibilities of unfairness to a party or unnecessary decisionmaking on matters of local law.[64] But, upon careful evaluation of all factors, it might be concluded that no party would be deprived of any procedural or substantive right, and that the local law applicable is neither novel nor unsettled. On remand of this case, the District Court will have the opportunity to determine initially whether the policies underlying the doctrine of pendent jurisdiction would better be served by adjudication of Prakash's local-law claims along with his federal claims.[65]

The judgment appealed from is reversed, and the case is remanded to the District Court for further proceedings consistent with this opinion.

*So ordered.*

---

ing Co. v. Baltimore, 216 U.S. 285, 288, 30 S.Ct. 326, 327, 54 L.Ed. 482, 483 (1910).

**60.** "Pendent jurisdiction, in the sense of judicial *power*, exists whenever there is a [federal] claim ... and the relationship between that claim and the state law claim permits the conclusion that the entire action before the court comprises but one constitutional 'case'. The federal claim must have substance sufficient to confer subject matter jurisdiction on the court.... The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole." *UMW v. Gibbs, supra* note 58, 383 U.S. at 725, 86 S.Ct. at 1138, 16 L.Ed.2d at 227–228 (emphasis in original) (footnotes and citations omitted).

**61.** *Id.* at 726, 86 S.Ct. at 1139, 16 L.Ed.2d at 228 (footnote omitted). See also *Baurer v. Planning Group, Inc.*, 215 U.S.App.D.C. 384, 389, 669 F.2d 770, 775 n. 16 (1981); *United States v.*

Kember, 208 U.S.App.D.C. 380, 385, 648 F.2d 1354, 1359 (1980); *Riker Laboratories v. Gist-Brocades N.V.*, 205 U.S.App.D.C. 64, 72, 636 F.2d 772, 780 (1980).

**62.** As we have noted, the District Court dismissed Prakash's nonfederal claims for assumed lack of jurisdiction, and not as an exercise of discretion. See text *supra* at note 5.

**63.** *UMW v. Gibbs, supra* note 58, 383 U.S. at 725, 86 S.Ct. at 1138, 16 L.Ed.2d at 228.

**64.** *UMW v. Gibbs, supra* note 58, 383 U.S. at 726–727, 86 S.Ct. at 1139, 16 L.Ed.2d at 228–229. See *Financial Gen. Bankshares v. Metzger*, 220 U.S.App.D.C. 219, 223–229, 680 F.2d 768, 772–778 (1982); *Price v. Franklin Inv. Co.*, 187 U.S.App.D.C. 383, 395–396, 574 F.2d 594, 606–607 (1978).

**65.** Unless the court exercises pendent jurisdiction to consider the nonfederal claims, it must proceed appropriately to determine whether there is diversity of citizenship between Prakash and his adversaries, and if so to resolve those claims under the latter head of jurisdiction. See text *supra* at notes 34–45.