**LOCAL 336, AMERICAN FEDERATION OF MUSICIANS, AFL–CIO, and Diane Martin, Appellants,**

v.

**Augustus BONATZ, t/a Aiebon Inn, Appellee.**

**No. 72–1057.**

United States Court of Appeals, Third Circuit.

Argued Feb. 9, 1973.

Decided March 9, 1973.

Bernard N. Katz, Warren J. Borish, Meranze, Katz, Spear & Bielitsky, Philadelphia, Pa., Philip G. Steel, Steel & Steel, Camden, N. J., for appellants.

Jack W. Tapper, Dimon, Haines & Bunting, Mt. Holly, N. J., for appellee.

Before McLAUGHLIN, and GIBBONS, Circuit Judges, and WEIS, District Judge.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

This is an appeal by the plaintiffs, Local 336, American Federation of Musicians, AFL–CIO, (the local union) and Diane Martin (the leader) from an order dismissing their complaint in the district court for want of jurisdiction. The defendant Augustus Bonatz t/a Aiebon Inn, (the employer) is the proprietor of a cocktail lounge in Florence, New Jersey where occasionally he provides musical entertainment for his customers. The local union is an unincorporated association functioning as a labor union of musicians, with its principal office in Burlington, New Jersey. The leader is a member of the local union who resides in Willingboro, New Jersey. In the complaint the local union and the leader assert federal jurisdiction solely by virtue of Section 301 of the Labor-Management Relations Act of 1947. 29 U.S.C. § 185. They allege that on December 15, 1967, they and the employer entered into a labor contract, a copy of which is attached to the complaint as Exhibit A, pursuant to which the employer engaged the musical services of the leader and two other undesignated members of the local union for two evenings a week for thirteen weeks beginning January 5, 1968; that the labor contract contained a clause providing for binding arbitration of disputes before the International Executive Board of the American Federation of Musicians; that a dispute arose and was submitted to arbitration by the local union and the leader; and that an award was made by the arbitrators in favor of

the local union and the leader, to which award the employer refuses to abide. They seek a judgment enforcing the award, with interest and counsel fees. The employer filed an answer which admits the jurisdictional allegation, admits the execution of "a labor contract . . Exhibit A" and asserts four separate defenses:

### "FIRST DEFENSE

The complaint fails to state a claim against defendant upon which relief can be granted.[1]

### SECOND DEFENSE

Plaintiff breached the contract and thereby waived any rights under the contract which she may have had.

### THIRD DEFENSE

Defendant is not bound by the arbitration agreement of the American Federation of Musicians in that there was no appearance by defendant.

### FOURTH DEFENSE

The arbitration agreement is void as being against public policy in that there is a clear conflict-of-interest in having the defendant judged by that organization of which the plaintiff is a member." (footnote added).

It is clear that the pleadings do not traverse federal jurisdiction. The plaintiffs moved, pursuant to rule 56, Fed.R. Civ.P., for summary judgment. In support of this motion they established by affidavit the execution of Exhibit A, the existence of a dispute, the submission of that dispute to the designated arbitrators, notice to the employer that the arbitration panel would proceed, the default by the employer after such notice and opportunity to participate, the impartiality of the arbitration panel and

the award. No answering affidavits were filed.

When the motion for summary judgment came on for argument the district court, *sua sponte*, raised the issue of the court's jurisdiction under § 301. After a brief colloquy, the court ruled that Exhibit A was a simple contract between an employer and an employee, that no labor organization was a party to the agreement, and that the federal court lacked jurisdiction to enforce the arbitration award resulting from such a contract. No opportunity was afforded the local union or the leader to establish any further jurisdictional facts.

We reverse.

The federal district courts have jurisdiction under Section 301 of the Labor-Management Relations Act of 1947 not only to compel contract arbitration of labor contracts but also to enforce arbitration awards made pursuant to such contracts. 9·U.S.C. § 9; General Drivers Local 89 v. Riss & Co., 372 U.S. 517, 83 S.Ct. 789, 9 L.Ed.2d 918 (1963) (per curiam); Philadelphia Marine Trade Association v. Longshoremen's Local 1291, 365 F.2d 295 (3rd Cir. 1966). Thus, dismissal *sua sponte* pursuant to rule 12(b), Fed.R.Civ.P., may be sustained here only if no facts which the local union and the leader might prove would bring Exhibit A within the coverage of § 301 as an agreement between a labor organization and an employer.

Exhibit A is the standard so-called Form B contract used by locals of the American Federation of Musicians, AFL–CIO, for many years throughout the country for musical engagements of a transitory nature. It covers employment in what the musicians refer to as the club date field, as distinguished from employment by the few regular and long term purchasers of music such

1. On appeal the employer claims this defense traversed federal jurisdiction. Obviously it did not, since a dismissal on this ground would be on the merits. Obviously, also, it was not so intended, since the jurisdictional allegations were admitting in the same pleading.

as symphonic orchestras, network broadcasters, opera societies and theatres. The appellants contend that had they been given the opportunity, in support of the pleaded jurisdictional allegation they would have been able to establish:

(1) The greatest number of musical engagements are in the club date field, and that orchestra leaders, sub-leaders and sidemen perform in that field and elsewhere interchangeably wherever work is available.

(2) Musician union members agree not to accept employment except pursuant to a contract in a form issued by the American Federation of Musicians, and that Exhibit A is one such form contract.

(3) There is no arrangement in the club date field, which includes thousands of occasional employers of musicians, for prehire contracts (Cf. 29 U.S.C. § 158(f), applicable to the construction industry), but a separate contract is entered into for each engagement.

(4) An orchestra leader negotiating with a club date employer for a musical engagement has authority to act on behalf of the local union of which he is a member and on behalf of the sidemen who will participate in the engagement with him in the making of a Form B contract, and the leader in this case was so authorized.

The nature of the music industry and the operation of the Form B contract are set forth in considerable detail in American Federation of Musicians v. Carroll, 391 U.S. 99, 88 S.Ct. 1562, 20 L.Ed.2d 460 (1968). That case holds that the Federation's enforcement of the requirement that its member-leaders use the Form B contract for club dates fell within the protection of the Norris-LaGuardia Act, 29 U.S.C. §§ 101–15, and outside the reach of the Sherman Act, 15 U.S.C. §§ 1–7. Since the exemption in the Norris-LaGuardia Act for allowable union activity probably is broader than the district court jurisdiction conferred in § 301, Carroll is not dispositive of the ultimate issue whether a Form B agreement is covered by that section. But Carroll clearly belies the assumption of the district court that Form B (Exhibit A) is a mere employment contract in which the local union has no interest. If the local union establishes the facts which it has represented (which, the briefs suggest, probably will not be seriously disputed) a § 301 jurisdictional finding seems highly likely.

For example, the local union proposes to establish that its leader-member had actual and apparent authority to bind it when she executed a Form B contract with the employer. Her authority to so act is determined, under the Labor-Management Relations Act, by ordinary agency principles. 29 U.S.C. § 185(b), (e). See e. g., Barefoot v. International Brotherhood of Teamsters, 424 F.2d 1001, 1004 (10th Cir.), cert. denied, 400 U.S. 950, 91 S.Ct. 239, 27 L.Ed.2d 257 (1970); Teamsters Local 524 v. Billington, 402 F.2d 510, 513 (9th Cir. 1968). The local union, then, would be a labor organization suing for violation of its contract with the employer. See 29 U.S.C. § 185(a).

The local union's agency position is consistent with the text of Exhibit A. The Exhibit captioned:

"CONTRACT BLANK
AMERICAN FEDERATION OF MUSICIANS OF THE
UNITED STATES AND CANADA
(HEREIN CALLED 'FEDERATION')
BURLINGTON MUSICAL SOCIETY
LOCAL NO. 336, A. F. of M.
BURLINGTON, NEW JERSEY"

The employer makes several direct undertakings with the union.[2] The contract is signed by the leader, but with the local number of the local union inserted immediately following her name.

■ Moreover, the labor organization and the leader urge that the latter signed the Form B contract in a representational capacity on behalf of the sidemen as well as on behalf of the local. A § 301 contract must be between an employer and a labor organization representing employees. Labor organizations are broadly defined elsewhere in the Labor-Management Relations Act:

"The term 'labor organization' means any organization of any kind, *or any agency or employee representation committee or plan* . . . which exists for the purpose . . . of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work." 29 U.S.C. § 152(5) (emphasis added.)

Even accepting the proposition that the leader did not, when signing Form B, have authority to bind the local union to a labor contract with the employer, as appears on its face, she purported to act on behalf of two other union members, the sidemen, with respect to many of the subjects listed in 29 U.S.C. § 152(5). If an issue is actually framed by the pleadings and tried as to the existence of a §

301 contract, in this case the leader may well qualify as an agency, representation committee, or plan, and hence as a labor organization.

■ The jurisdictional issue having been raised at this juncture we cannot say that as a matter of law Exhibit A is a § 301 contract. We hold only that it was error for the district court to decide that issue with this record on a *sua sponte* rule 12(b)(1) motion. We recognize that the district courts have more latitude as to modes of proof in the disposition of issues of jurisdictional fact. *E. g.*, Tanzymore v. Bethlehem Steel Corp., 457 F.2d 1320 (3d Cir. 1972); Nelson v. Keefer, 451 F.2d 289 (3d Cir. 1971). But we have never departed from the rule that even on such an issue the record must clearly establish that after jurisdiction was challenged the plaintiff had an opportunity to present facts by affidavit or by deposition, or in an evidentiary hearing, in support of his jurisdictional contention. *E. g.*, Groh v. Brooks, 421 F.2d 589, 594 (3d Cir. 1970); Shahmoon Industries, Inc. v. Imperato, 338 F.2d 449 (3d Cir. 1964). The existence of an agreement between a labor organization and an employer is, for § 301 purposes, a jurisdictional fact. For the determination of that fact, no doubt, those more liberal modes of proof apply which the Supreme Court has approved for jurisdictional determinations.[3] Whether the court

---

2. "Representatives of the Federation local in whose jurisdiction the musicians shall perform hereunder shall have access to the place of performance (except to private residences) for the purpose of conferring with the musicians.

No performance on the engagement shall be recorded, reproduced or transmitted from the place of performance, in any manner or by any means whatsoever, in the absence of specific written agreement with the Federation relating to and permitting such recording, reproduction or transmission.

The Employer represents that there does not exist against him, in favor of any member of the Federation, any claim of any kind arising out of musical services rendered for such Employer. No mu-

sician will be required to perform any provisions of this contract or to render any services for said Employer as long as any such claim is unsatisfied or unpaid, in whole or in part. . . .

Rules and Regulations of the Federation and of any local thereof applicable to this engagement (not in conflict with those of the Federation) will be adhered to and the parties acknowledge that they are and each has the obligation to be fully acquainted therewith."

3. *See* Land v. Dollar, 330 U.S. 731, 735, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); Gibbs v. Buck, 307 U.S. 66, 71–72, 59 S.Ct. 725, 83 L.Ed. 1111 (1939); KVOS, Inc. v. Associated Press, 299 U.S. 269, 57 S.Ct. 197, 81 L.Ed. 183 (1936); Mc-

proceeds by considering affidavits or depositions, or by an evidentiary hearing, however, something must appear of record to contradict the pleaded and uncontroverted jurisdictional allegation that there was a § 301 contract and to support the district court's determination.

The judgment of the district court will be reversed and the case remanded for further proceedings consistent with this opinion.

Nutt v. General Motors Acceptance Corp., 298 U.S. 178, 184–190, 56 S.Ct. 780, 80 L.Ed. 1135 (1936) ; Wetmore v. Rymer, 169 U.S. 115, 120, 18 S.Ct. 293, 42 L.Ed. 682 (1898).