Susan I. SHEPHERDSON

v.

LOCAL UNION NO. 401 OF INTERNATIONAL ASSOCIATION OF BRIDGE STRUCTURAL AND ORNAMENTAL IRONWORKERS, et al.

Civ. A. No. 92–5032.

United States District Court,
E.D. Pennsylvania.

May 28, 1993.

Rosemarie Rhodes, Harper & Paul, Philadelphia, PA, for plaintiff.

Robert M. Abramson, Abrams, Abramson & Tabb, Elkins Park, PA, Laurence E. Gold, Connerton, Ray & Simon, Washington, DC, Victor J. Van Bourg, Van Bourg, Weinberg, Roger & Rosenfeld, San Francisco, CA, Richard Kirschner, Richard Kirschner & Associates, Philadelphia, PA, for defendants.

## MEMORANDUM OPINION AND ORDER

VANARTSDALEN, Senior District Judge.

## I. INTRODUCTION

Two of the defendants have moved to dismiss plaintiff's employment discrimination action brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Title VII), for harassment and discharge because of plaintiff's sex, and one defendant has moved for judgment on the pleadings and in the alternative for summary judgment (motion for judgment). The critical issue raised by the first motion is whether plaintiff's employer had fifteen or more employees during the relevant periods of time. That issue depends, in turn, upon whether for jurisdictional purposes certain paid instructors for an Apprentice Training Fund (the Fund) are to be counted as employees of Local Union No. 401 of the International Association of Bridge Structural and Ornamental Ironworkers (Local 401), or, alternatively, whether the employees of the International Association of Bridge Structural and Ornamental Ironworkers Union (the International) may be included with those of Local 401 to meet the statutory minimum. The question of whether the International's employees may be included with those of Local 401 for jurisdictional purposes has implications for resolution of the International's motion for judgment. If the International's employees cannot be included with those of Local 401 for jurisdictional purposes, then the International is entitled to summary judgment.

In consideration of the affidavits, deposition testimony, and exhibits appended thereto, I conclude that plaintiff has failed to establish that her employer, Local 401, had fifteen or more employees during the relevant periods of time. In addition, plaintiff has failed to show that the International can be considered her employer under a single entity or agency theory. Finally, I conclude that as a matter of law, the International cannot be considered plaintiff's employer. This action must therefore be dismissed. All parties have been given reasonable opportunity for discovery and to present all material relevant to the pending motions. (See Order of December 23, 1992, filed Doc. No. 6).

## II. PROCEDURAL HISTORY

Plaintiff's complaint was filed on August 28, 1992. She alleges that she was hired by

the defendant, Local 401, on or about February, 1988 and that her employment was terminated on March 23, 1992. (Complaint, ¶¶ 9, 15). According to her complaint, throughout her employment with Local 401 she was sexually harassed by her immediate supervisor, Joseph J. Dougherty (Dougherty), who was and is the Financial Secretary–Treasurer–Business Representative of Local 401. (Complaint, ¶¶ 10, 11). She alleges further that she was "sexually harassed and terminated because of her sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended, Section 2000e et seq." (Complaint ¶ 17). In addition, plaintiff alleges in the complaint that she objected to Dougherty about the sexual harassment and advised a vice president of the International and the attorney for Local 401 of Dougherty's conduct, but that the conduct "did not stop." (Complaint, ¶¶ 13, 14). The complaint names Local 401, the International, and Dougherty as defendants. Plaintiff seeks relief under Title VII and also under various state common law causes of action, asserting that the court has pendent jurisdiction over her state law claims.

On November 23, 1992, Local 401 and Dougherty filed a joint motion to dismiss the complaint, asserting that Local 401 is not an "employer" within the definition of Title VII because during all relevant times Local 401, the alleged employer, had less than fifteen employees. (filed Doc. No. 3). Attached to the motion was an affidavit by Joseph J. Dougherty. The affidavit had attached as exhibits a copy of the current union contract between the Steel Erectors' Association of Metropolitan Philadelphia and Vicinity (the employers' bargaining agent for the applicable industry and jurisdiction), and Local 401, (filed Doc. No. 3, Ex. 1), a copy of the Constitution of the International Association of Bridge, Structural and Ornamental Iron Workers, (filed Doc. No. 3, Ex. 2) (referred to as the constitution or the International's constitution), and a copy of Local 401's By-Laws. (filed Doc. No. 3, Ex. 3). Plaintiff responded to this motion citing the constitution and attaching her affidavit to the response. (filed Doc. No. 4, Exs. A & B).

On March 22, 1993, the International filed a motion for judgment on the pleadings or, in the alternative, for summary judgment, with an attached affidavit of Leroy E. Worley, General Secretary of the International, and a copy of the International's constitution. (filed Doc. No. 9).[1] In addition, the oral deposition of Dougherty was taken and submitted with the supplemental brief of Local 401 on April 14, 1993. (filed Doc. No. 10). Plaintiff has not filed any response to the International's motion for judgment.

### III. STATUTORY TERM "EMPLOYER"

Title VII makes it unlawful for an "employer," as defined in the statute, to, *inter alia,* "discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e–2(a)(1). The statute defines "employer," insofar as presently relevant, as follows:

> (b) The term "employer" means a person[2] engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person. . . .

42 U.S.C. § 2000e(b).

The sole contention by defendants Local 401 and Dougherty in the present motion to dismiss is that plaintiff's alleged employer, Local 401, (Complaint ¶ 9), is not an "employer" within the statutory definition because it never had fifteen or more employees during the relevant periods of time, and because Local 401 is not an employer within the statutory definition, Dougherty is not an

---

**1.** Although the International filed an answer on February 24, 1993, (filed Doc. No. 8), prior to the motion for judgment, the motion raises the issue of jurisdiction under the statutory framework and is denominated in part as a motion for summary judgment. Therefore, the filing of the answer does not preclude the International, by waiver, from raising the present issues.

**2.** The statutory definition of a person includes a corporation, association, and labor union. 42 U.S.C. § 2000e(a).

agent of such an employer under Title VII. (Local 401 and Dougherty's Mot. to Dismiss, filed Doc. No. 3; *see also* International's Mot. for Judgment, filed Doc. No. 9). Plaintiff's employment terminated on March 23, 1992, and therefore the relevant time period for counting the requisite number of employees is calendar year 1991 through calendar year 1992.[3] As will be later detailed, and as I believe plaintiff concedes, Local 401 would have had fifteen or more employees during the relevant time period only if (1) instructors for the Fund are included as Local 401 employees; or (2) employees of the International are included as Local 401 employees either under the theory that Local 401 and the International constitute a single employer for purposes of Title VII or under an agency doctrine.

## IV. SUBJECT MATTER JURISDICTION

Defendants Local 401 and Dougherty have challenged the court's subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1). Unless the instructors for the Fund or the employees of the International are counted in calculating whether Local 401 had fifteen or more employees at any relevant time, plaintiff may not proceed with this action against defendants Local 401 and Dougherty. The statutory requirement that Local 401 be an employer having at least fifteen employees is a necessary condition to maintaining this action and therefore, essential to the court's subject matter jurisdiction.

Defendant, the International, filed a motion for judgment, but has not directly challenged the court's subject matter jurisdiction. However, determination of whether the court has jurisdiction as to Ms. Shepherdson's suit against defendants Local 401 and Dougherty necessarily calls into question the court's subject matter jurisdiction over plaintiff's claim against the International under the single entity and agency theories.

"A federal court is bound to consider its own jurisdiction preliminary to consideration of the merits," *Trent Realty Assoc. v. First Fed. Sav. & Loan Ass'n,* 657 F.2d 29, 36 (3d Cir.1981), because the federal courts are courts of limited jurisdiction. *Employers Ins. of Wausau v. Crown Cork & Seal Co.,* 905 F.2d 42, 45 (3d Cir.1990). Although the International did not move pursuant to Rule 12(b)(1)· to dismiss the action against it, I will consider, *sua sponte,* the court's subject matter jurisdiction as to Ms. Shepherdson's suit against the International.

■ When a court raises the issue of its subject matter jurisdiction, the plaintiff must have "an opportunity to present facts by affidavit or by deposition, or in an evidentiary hearing, in support of [her] jurisdictional contention." *Local 336, American Fed. of Musicians, AFL–CIO v. Bonatz,* 475 F.2d 433, 437 (3d Cir.1973). The Court of Appeals for the Third Circuit provided in *Bonatz* that this opportunity should occur after subject matter jurisdiction is challenged. In accordance with *Bonatz,* I am satisfied that the plaintiff has had the full opportunity to support a contention of subject matter jurisdiction as to the International. That issue though not raised formally is inextricably intertwined with her contention of jurisdiction as to Local 401, and the International's position on its employer status is directly raised and at issue in the International's motion for judgment.

■ Where jurisdiction is challenged, ordinarily the burden is on the plaintiff to prove that the court has jurisdiction.

[W]hen the party moving for dismissal under Rule 12(b)(1) challenges the factual basis for jurisdiction, the nonmoving party (i.e., the plaintiff) must submit affidavits and other relevant evidence to resolve the

**3.** "The 'current year' referred to in the statute is the year in which the alleged discrimination occurred." *Dumas v. Town of Mount Vernon, Ala.,* 612 F.2d 974, 979 n. 4 (5th Cir.1980), *see also EEOC v. Pettegrove Truck Service, Inc.,* 716 F.Supp. 1430, 1431 (S.D.Fla.1989) (citing *Dumas*). Although plaintiff asserts that Dougherty harassed her during her entire employment by Local 401, her termination date is an appropriate benchmark for determining the relevant period of time as evidenced by the arguments in her brief in opposition to defendants' motion, (filed Doc. No. 4), and as evidenced by statements in her affidavit referring almost exclusively to her termination date and calendar year 1991 in discussing the relevant period. (filed Doc. No. 4, Ex. A).

factual dispute regarding the court's jurisdiction.

*Kontos v. United States Dept. of Labor*, 826 F.2d 573, 576 (7th Cir.1987). Determination of whether the alleged "employer" meets the statutory definition and thus provides subject matter jurisdiction is a matter to be decided by the court.

In *Mortensen v. First Federal Savings and Loan Ass'n*, 549 F.2d 884 (3d Cir.1977), the Court of Appeals for the Third Circuit stated:

> Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.

549 F.2d at 891. Those principles apply to a Title VII sex discrimination case raising, as here, the factual issue of the requisite number of fifteen employees. *See Norman v. Levy*, 767 F.Supp. 1441, 1443 (N.D.Ill.1991) (quoting the above passage from *Mortensen,* together with citations to similar cases in the Seventh Circuit.).

Attached to plaintiff's brief in opposition to the motion of Local 401 to dismiss is plaintiff's own affidavit and a copy of the International's constitution. (filed Doc. No. 4, Exs. A & B). The facts relevant to both the motion to dismiss and the motion for judgment do not appear to be in serious dispute or contention. Plaintiff first contends that her affidavit and the materials submitted by defendants establish that the instructors for the Apprentice Training Program were employees of Local 401 for the purpose of deter-

mining if the statutory minimum of fifteen employees existed during the relevant time. Secondly, plaintiff contends that the International's constitution establishes, on its face, either that the International has such "complete control over the affairs of Defendant Local 401," (filed Doc. No. 4, at 8), that Local 401 and the International must be considered a single employer under Title VII, or that the constitution created an agency relationship between the International and Local 401, and therefore, the International's employees must be counted along with Local 401's employees.[4] Based on these arguments, plaintiff asserts that Local 401 is an employer as defined by the statute. After consideration of the briefs, affidavits, and depositions submitted on this matter, I have determined that plaintiff's contentions are not valid.

## V. SINGLE ENTITY AND AGENCY THEORY

■ In a Title VII action, if an entity itself employs less than the requisite fifteen employees, application of single entity or agency theory may increase the number of employees in satisfaction of the jurisdictional minimum. Plaintiff cites *Publicker Indus., Inc. v. Roman Ceramics Corp.*, 603 F.2d 1065 (3d Cir.1979), *Nation v. Winn–Dixie Stores, Inc.*, 567 F.Supp. 997 (N.D.Ga.1983), *Fanfan v. Berwind Corp.*, 362 F.Supp. 793, 795 (E.D.Pa.1973), and *Williams v. New Orleans Steamship Ass'n*, 341 F.Supp. 613 (E.D.La. 1972), to support her assertion that the single employer theory applies to the International and Local 401. Although corporate law doctrines aid in determining whether under Title VII two entities can be considered a single employer, for jurisdictional and substantive purposes, *see Armbruster v. Quinn*, 711 F.2d 1332, 1337 (6th Cir.1983), defendant correctly points out that *Publicker* and *Fanfan* do not aid in resolving the present issue. (filed Doc. No. 10, at 18–19).[5] *Williams* and *Winn–*

---

4. Although there is no evidence of record sufficient to establish that the number of employees of Local 401 plus those of the International Union was at relevant times fifteen or more, for purposes of this decision, I will assume, as apparently do the parties, that if the total employ-

ees of both unions are included, the jurisdictional prerequisite would be met.

5. *Publicker* instructs that alter ego theory provides an equitable tool for a court to use in the prevention of fraud or injustice, 603 F.2d at 1069, neither of which is at issue here, and also

*Dixie,* however, shed light on the appropriate method of analysis.

The district court in *Williams* determined that the New Orleans Steamship Association and its member companies constituted a single employer under Title VII. The Association controlled employment determinations within the locale and established employment policies and practices for the member companies. This influence on and control over employment decisions determined the Association and member companies' status as a single employer. 341 F.Supp. at 616. Similarly, the lack of control and influence over employment decisions resulted in a determination by the district court in *Winn–Dixie Stores* that the parent corporation could not be liable for the acts of the subsidiary. Although the subsidiary utilized the employee training manuals issued by the parent, the subsidiary controlled its own personnel decisions. 567 F.Supp. at 1011.

*Childs v. Local 18, International Brotherhood of Electrical Workers,* 719 F.2d 1379 (9th Cir.1983), cited by defendants, involved a district court's dismissal of a Title VII suit filed against a local union, Local 18, and its international association, the International Brotherhood of Electrical Workers (IBEW). The district court dismissed the Title VII claims based on its determination that it lacked subject matter jurisdiction because IBEW was not the plaintiff's employer and Local 18 did not employ the requisite fifteen employees within the terms of 42 U.S.C. § 2000e(b). 719 F.2d at 1382. In upholding the district court's ruling the appellate court stated: "Although Local 18 is chartered by the IBEW, it conducts its own labor relations, hires and fires employees on its own, elects its own officers, conducts its own collective bargaining, and has a separate treasury." 719 F.2d at 1382.

The Court of Appeals for the Ninth Circuit commented in *Childs* that several Circuit Courts of Appeal have adopted the four-prong test utilized in labor cases by the National Labor Relations Board (NLRB) to determine whether two distinct entities constitute a single employing entity. The NLRB test considers: 1) inter-relation of operations; 2) common management; 3) centralized control of labor relations; and 4) common ownership or financial control. 719 F.2d at 1382, citing *York v. Tennessee Crushed Stone Assoc.,* 684 F.2d 360 (6th Cir. 1982); *Mas Marques v. Digital Equipment Corp.,* 637 F.2d 24 (1st Cir.1980); and *Baker v. Stuart Broadcasting Co.,* 560 F.2d 389 (8th Cir.1977).

> While each factor is indicative of interrelation and while control over the elements of labor relations is a central concern, the presence of any single factor in the Title VII context is not conclusive. All four criteria need not be present in all cases and, even when no evidence of common control of labor relations policy is presented, the circumstances may be such that the Title VII single-employer doctrine is applicable.

*Armbruster v. Quinn,* 711 F.2d 1332, 1337–38 (6th Cir.1983) (citations omitted). Significant input into employment and other personnel decisions may suffice to establish single-entity status under Title VII, thereby allowing combination of the number of employees from each entity to satisfy the fifteen employee requirement. 711 F.2d at 1338.

Following this general approach, the Court of Appeals for the Ninth Circuit in *Childs* concluded that the international union and one of its locals were not a single employer for Title VII purposes. The plaintiff in that case additionally argued that under Title VII she could maintain a suit against Local 18 as an agent of IBEW, an employer with fifteen or more employees. In rejecting this argument, the court indicated that traditional indicia of an agency relationship applied and that plaintiff had not alleged facts, such as consent to another acting on the entities behalf or the principal's control of the agent, sufficient to establish such an agency relationship. 719 F.2d at 1382.

Defendant cites to *Ames v. Whitman's Chocolates,* No. 91–3271, 1991 WL 281798, 1991 U.S.Dist. LEXIS 18389, 57 F.E.P.

---

discusses apparent authority under agency principles. *Fanfan* provides that a parent may be liable for acts of its subsidiary if the subsidiary is

a mere instrumentality through which the parent perpetrates a fraud causing an injustice. 362 F.Supp. at 795.

Cases 1301 (E.D.Pa. December 30, 1991), for instruction on the relationship between two entities sufficient to establish agency. Although *Ames* involved suit filed under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq., the general agency principles discussed in that case apply to Title VII actions as well. As articulated in *Ames:*

> An agency relationship requires the presence and exercise of a master's control. The requisite inquiry is whether some nexus exists between the parent corporation [or association] and the subsidiary ... to indicate that the latter is not independent, "but rather totally under the control and dominion" of the parent.

1991 WL 281798 at *7, 991 U.S.Dist. LEXIS 18389, at *18.

Evidence of agency can be found in the terms of an organization's constitution, *Berger v. Iron Workers Reinforced Rodmen Local 201,* 843 F.2d 1395, 1430 (D.C.Cir.1988). "To the extent that provisions of the constitution deal specifically with the practices found to be discriminatory [ ], they may be sufficient in themselves to raise an inference that the local is [the International's] agent," 843 F.2d at 1430–31; however, the nature and extent of an international union's actual control matters more than its theoretical control in finding an agency relationship. 843 F.2d at 1431.

■ Not only may an international and local union's actual relationship render the two a single entity or render the local an agent of the international for jurisdictional purposes, but that relationship may render the international union jointly liable for acts of the local union. Whether the law imparts responsibility for discriminatory acts of the local to the international depends on the entities' interrelationship with respect to the act from which liability stems.[6] *See Sinyard v. Foote & Davies Div. of McCall Corp.,* 577 F.2d 943, 945 (5th Cir.1978), *see also Glus v. G.C. Murphy Co.,* 629 F.2d 248 (3d Cir.1980), *vacated,* 451 U.S. 935, 101 S.Ct. 2013, 68 L.Ed.2d 321 (1981), and on remand *aff'd in relevant part,* 654 F.2d 944 (3d Cir.1981).

## VI. EMPLOYEES OF LOCAL 401 FOR JURISDICTIONAL PURPOSES

■ With agency and single entity principles in mind, I will now discuss which employees may be counted toward the jurisdictional minimum. As indicated by plaintiff and not challenged by defendants, both part-time and full-time employees count toward meeting the jurisdictional minimum. *See Thurber v. Jack Reilly's, Inc.,* 717 F.2d 633 (1st Cir.1983), *cert. denied,* 466 U.S. 904, 104 S.Ct. 1678, 80 L.Ed.2d 153 (1984); *Hornick v. Borough of Duryea,* 507 F.Supp. 1091, 1098 (M.D.Pa.1980); (*see also,* filed Doc. No. 4, at 10). The individuals asserted by plaintiff to be employees of Local 401 for jurisdictional purposes can be categorized into three separate groups: 1) individuals directly employed by Local 401; 2) individuals directly employed by the Fund; and 3) individuals directly employed by the International. All of the individuals found to be directly employed by Local 401, if they worked during the requisite time period, will be counted toward the fifteen employee minimum. Counting individuals in the second and third categories toward the statutory minimum can only be done if applying single entity or agency theory those individuals constitute employees of Local 401.

### A. Direct Employees of Local 401

In her affidavit, plaintiff lists the individuals she considered to constitute employees for jurisdictional purposes. (Shepherdson Aff. ¶ 11, filed Doc. No. 4, Ex. A). According to Ms. Shepherdson, from January, 1991 through December, 1991,[7] Local 401 em-

---

6. In *Glus v. G.C. Murphy Co.,* 629 F.2d 248 (3d Cir.1980), *vacated,* 451 U.S. 935, 101 S.Ct. 2013, 68 L.Ed.2d 321 (1981), and on remand *aff'd in relevant part,* 654 F.2d 944 (3d Cir.1981), the international union's Title VII liability arose from a collective bargaining agreement which separated job classifications, pay scales, and seniority systems by sex. In that case, not only did the international union conduct negotiations for the local union, the international union "was the sole union signatory to the collective-bargaining agreement for the portion of the period where the discrimination was found to have taken place...." 629 F.2d at 251.

7. Plaintiff did not attempt to identify employees for any other possibly relevant period.

ployed on a full-time basis the following eight individuals: Marie Gemmell, Carol Smolda, Karen Iochum, Susan Shepherdson, Joseph Dougherty, Neil McCrossen, George Shepherdson, and Norman Douglas. Plaintiff listed a ninth person, Ann Lang, as working full-time for Local 401 until March, 1991, when she retired.

According to Dougherty's affidavit, (filed Doc. No. 3, Ex. A, 3–5), the following eight individuals were employees of Local 401 during the relevant time period of calendar years 1991–1992, and unless otherwise indicated the individuals were employed full-time for the entire calendar years: defendant, Dougherty; Neil McCrossen, business agent; George R. Shepherdson, business representative; Dolores P. Hall, secretary; Karen Iochum, secretary and bookkeeper; Carol A. Smolda, secretary; Marie D. Gemmell, office clerk, worked part-time, two to three days per week from January, 1991, through June 1991, then worked four days a week until she retired on January 31, 1992, and she was rehired part-time from November 10, 1992, through March 4, 1993 (Dougherty Dep. at 19–20, filed Doc. No. 10, Ex.; Dougherty Aff. at 5); and plaintiff, Susan Shepherdson, secretary until her employment was terminated on March 23, 1992, which only constitutes approximately twelve weeks in calendar year 1992. (Dougherty Aff., filed Doc. No. 3, Ex. A, at 3–5).

Norman Douglas, indicated by plaintiff as a full-time employee of Local 401, received W–2 wages from Local 401 in 1991 amounting to $1,200.00, pay of $50.00 per meeting for performing his duties as recording secretary of Local 401. (Dougherty Dep. at 18; Ex. D–5). Mr. Douglas also served as the Apprentice Coordinator for Ironworkers Local 401 Joint Apprentice and Training Committee, receiving W–2 wages from the Fund in 1991, amounting to $59,439.50, (Dougherty Dep. at 19, 29–30; Ex. D–19), and accordingly, Dougherty considered him to be a full-time employee of the Fund, and not an em-

ployee of Local 401. (Dougherty Dep. at 30). Mr. Douglas is appropriately considered as a direct employee of the Fund, and can be counted as an employee of Local 401 only if other Fund employees are counted.

Dougherty testified in his deposition that Ann Lang, whom Ms. Shepherdson stated was a full-time employee until retirement in March, 1991, actually worked as secretary part-time from July 11, 1988, until retiring in August of 1990. (Dougherty Dep. at 29). Notwithstanding Ms. Shepherdson's failure to offer any evidence to show that Ann Lang was employed by Local 401 after her retirement in August of 1990, Ms. Shepherdson's statement that Ms. Lang retired in March of 1991, would at most support a finding that she worked for approximately thirteen weeks in calendar year 1991 and for no weeks in calendar year 1992. Even by plaintiff's accounting, Ms. Lang did not work the requisite twenty weeks, and she cannot be counted as an employee of Local 401 for jurisdictional purposes in either calendar year at issue.

The total direct employees of Local 401 who can be counted for jurisdictional purposes is eight for calendar year 1991 and six for calendar year 1992, as Ms. Gemmell only worked approximately eleven weeks and Ms. Shepherdson only worked approximately twelve weeks in calendar year 1992. Therefore, unless seven additional individuals in calendar year 1991 or nine additional individuals in calendar year 1992 can be considered toward the statutory minimum, plaintiff may not proceed with her Title VII action against Local 401 and Dougherty.

### B. Apprenticeship Instructors Employed by the Fund

■ Ms. Shepherdson further provides that the following seven individuals were part-time employees from January, 1991, through May 15, 1991, (19 weeks) and from October 15, 1991, through December 30, 1991, (11 weeks), (Shepherdson Aff. ¶ 11(b), filed Doc. No. 4, Ex. A),[8] the period during

---

**8.** The phrase in the statute requiring employment for twenty or more weeks can be interpreted as either requiring twenty consecutive weeks or any twenty weeks within a calendar year. *See, e.g. Williams v. Leeb,* No. 86 C 2699, 1986 WL 8374 (N.D.Ill. July 19, 1986). *Pedreyra v. Cornell Pre-*

*scription Pharmacies,* 465 F.Supp. 936 (D.Colo. 1979), citing to the Congressional debates, provides that Title VII was intended to cover both seasonal and part-time employees. 465 F.Supp. at 941. Although within the calendar year 1991 or 1992 the Fund Instructors did not work twen-

which the apprenticeship training generally takes place as administered by the Fund. (Dougherty Dep. at 76–77, filed Doc. No. 10, Ex.). These employees are appropriately considered as direct employees of the Fund: Paul Jaroma, Rondal Couser, Tom Casey, Terry Moran, Larry Stewart, Frank Nebel, and Craig Unger. According to plaintiff, also employed part-time were Bill Kassab, from January, 1991, until May, 1991, presumably for twenty weeks,[9] and Sherri Marsh, who was employed part-time for the entire calendar year of 1991. Except for Sherri Marsh, these individuals were employed by the Fund as Apprenticeship Instructors in accordance with the purpose of the established trust. Those individuals received W–2 Forms from the Fund under its employer number prepared by an outside payroll service. (filed Doc. No. 3, Ex. D–19). Sherri Marsh received a W–2 form indicating the wages earned in 1991 by her husband, Frank Marsh, for work he performed for the Fund, and cannot be considered a Fund employee. As previously discussed, Norman Douglas served as the apprenticeship coordinator for the Fund, (Dougherty Dep. at 19; Ex. D–5), and will be considered as a direct Fund employee. Including Mr. Douglas and Mr. Kassab, plaintiff has shown that for jurisdictional purposes the Fund employed nine individuals in calendar year 1991, and in calendar year 1992 employed seven individuals full-time, as Mr. Norman had resigned as coordinator.

Plaintiff submits "that her handling of the apprenticeship program's payroll was part of her Local 401 duties, and thus, those employees should be considered in arriving at the aggregate number of employees of Defendant 401." (filed Doc. No. 4, at 9). Citing to *Thurber v. Jack Reilly's, Inc.*, 717 F.2d 633 (1st Cir.1983), *cert. denied*, 466 U.S. 904, 104 S.Ct. 1678, 80 L.Ed.2d 153 (1984), plaintiff argues that even as part-time employees, the individuals on the apprenticeship program's payroll should be counted as employees.

ty consecutive weeks, they were employed for thirty consecutive weeks from October of 1991, through May of 1992, and should be counted for Title VII jurisdictional purposes as Fund employees. Therefore, if Fund employees can be counted as Local 401 employees, those Fund employees will be counted.

(filed Doc. No. 4, at 10). However, before counting any such individuals as employees, full-time or part-time, those individuals must be considered employees of Local 401 for Title VII jurisdictional purposes. The employer-employee relationship is key to this determination. *See Chavero v. Local 241, Division of the Amalgamated Transit Union,* 787 F.2d 1154, 1157 (7th Cir.1986).

I conclude that employees of the Fund do not constitute employees of Local 401, as the Fund is an entirely separate employer. The Fund was established by an agreement and declaration of trust between Local 401 and the Steel Erectors' Association of Metropolitan Philadelphia, an employers' association. (Trust Agreement, filed Doc. No. 10, Ex. D–7, appended to Dougherty Dep.). The purpose of the Fund is to establish and maintain a school for training and educating apprentices. (Ex. D–7, at 4).

The Fund is operated and controlled by six trustees, three of whom were appointed by Local 401, and three of whom were appointed by the employers' association with whom Local 401 has a labor relations contract. (Ex. D–7, at 8). Currently, the Local 401 appointees are Dougherty, Neil McCrossen, and George Cole, and the three employers' association appointees are George N. Salvino, William M. Gardner, and Walter J. Cantley. (Dougherty Dep. at 38–39). The six trustees, referred to collectively as the Joint Apprentice Committee, (Dougherty Dep. at 38), are "empowered and authorized to establish rules and regulations for the enforcement and carrying out of the purposes and objectives of the [Fund]." (Ex. D–7, at 9).

Employer contributions based on hours worked by Local 401 members finances the Fund. (Dougherty Dep. at 45; Ex. D–7, at 3). According to the Trust Agreement, the entity responsible for appointing a particular trustee may remove that trustee by resolution. (Ex. D–7, at 14). The Trust Agree-

9. If Bill Kassab was employed from January 1, 1991, through May 15, 1991, as were the other instructors, then he was only employed for nineteen weeks in 1991.

ment also establishes a procedure by which Local 401's general fund is reimbursed for a portion of the wages paid to Local 401 employees who perform administrative and maintenance work for the training program. (Ex. D–7, at 6).

The employers' association and Local 401 are directly represented in the make-up of the Joint Apprentice Committee, however, neither the employers' association nor Local 401 has direct control over the Fund, its hiring of employees, its requirements for training, nor its general administration. Dougherty recommends individuals to be hired by the Fund as apprentice instructors, but Local 401 does not hire instructors for the Fund; the Trustees are empowered to and do perform that function. (Dougherty Dep. at 53–62; Ex. D–7, at 9).

The actions of a Joint Apprenticeship Training Committee and the liability of employers who mandatorily funded the committee and trade associations who appointed half of the members of the committee were at issue in *General Building Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982). The Supreme Court discussed application of agency principles to a suit brought under 42 U.S.C. § 1981 and determined that neither the funding nor the authority to appoint half of the members sufficed to create an agency or employer-servant relationship between the committee and the entities which funded it and appointed its members. 458 U.S. at 394–395, 102 S.Ct. at 3152.

The Fund at issue here is a distinct entity from Local 401, it has a separate tax payer identification number, (Dougherty Dep. at 34; Ex. D–3 & D–8), and is not controlled by Local 401. Contrary to plaintiff's contentions, the utilization of Local 401's employees for performance of administrative work for the Fund, pursuant to the Trust Agreement implemented by the committee half comprised of employer's association appointees, does not establish that Fund employees are employees of Local 401 for jurisdictional purposes either under an agency or a single entity theory.

Local 401's only direct control with respect to the Fund is in its authority to appoint three of the six trustees, and its authority concerning removal of those three appointees in accordance with the trust instrument. Although Local 401 employees perform some administrative duties for the Fund, in accordance with Fund procedures, the Fund is not the agent of Local 401 nor does it constitute a single entity with Local 401. The agency principles articulated in *General Building Contractors Ass'n, Inc.* and applied in the context of 42 U.S.C. § 1981 apply here as well.

Paul Jaroma, Rondal Couser, Tom Casey, Terry Moran, Larry Stewart, Frank Nebel, Craig Unger, and Bill Kassab, the Fund employees specifically listed by Ms. Shepherdson as Local 401 employees and Mr. Douglas, the coordinator, do not constitute Local 401 employees by virtue of their employment by the Fund. For jurisdictional purposes, those Fund employees cannot be counted as Local 401 employees in order to meet the statutorily required minimum. Unless the International's employees can be counted with employees of Local 401 for jurisdictional purposes, plaintiff cannot maintain her suit in federal court.

### C. Relationship Between Local 401 and the International

■ No individuals are specifically identified as employees of the International as the parties assume that if the International's employees could be counted, the statutory minimum would be met. The actual relationship between Local 401 and the International is central to whether the International's employees can be counted. Plaintiff predicates her assertions that either the International and Local 401 comprise a single entity or Local 401 has an agency relationship with the International primarily on the language in the International's constitution. The International's constitution is the initial document establishing a relationship between the International and its affiliated local unions, and testimony by affidavit and deposition provides evidence of the actual relationship as well.

#### 1. The Union Constitution

Dougherty stated in his affidavit that "Local 401, although chartered by the Interna-

tional, is an autonomous organization." (Dougherty Aff. at 3, filed Doc. No. 3, Ex. A); however, plaintiff rebuts this statement with her own affidavit and with citation to the International's constitution. Plaintiff argues that certain provisions in the constitution establish that Local 401 had an agency relationship with or constituted a single entity with the International.

In support of her contention, plaintiff cites the following portions of the constitution, which regulate the local unions as summarized:

**Art. II, Sec. I,** the International consists of an unlimited number of local unions; **Art. IX, Sec. 10,** the International President (President) has the power to suspend a local's membership for violation of the constitution; **Art IX, Sec. 12,** the President may for examination take possession of books, papers, and financial accounts of a local; **Art. IX, Sec. 13,** the President may suspend any officer of a local for delinquency or dereliction of duty, or for failure to comply with the President's orders; **Art. XII, Sec. 7,** on unanimous vote, the International's General Executive Board (Board) may place a local under direct supervision or revoke its charter to correct corruption or financial malpractice, to assure compliance with collective bargaining agreements, or to restore democratic procedures; **Art. XII, Sec. 10,** the Board may establish the system of accounting and auditing, and may promulgate regulations for custody of local funds and property; **Art. XXI, Sec. 4,** locals must enact governing bylaws, and those bylaws may not contravene the constitution and must be approved by the Board; **Art. XXI, Sec. 6,** on a local vote to withdraw from the International, the minority retains the funds, property, and charter, and if there is no minority vote, the funds, property, and charter revert to the International; **Art. XXI, Sec. 13,** on suspension, dissolution, or revocation of a local, the property, books, charters, or funds of the local shall be forfeited and forwarded to the International; **Art. XXI, Sec. 20,** International procures bonding for local, which runs in favor of International in trust; **Art. XXI, Sec. 24,** local books, records, and accounts are

open for International auditing; **Art. XXI, Sec. 29 & 29(a),** International involvement in negotiating, drafting, and approving working rules and in negotiating agreements; **Art. XXIII, Sec. 1–10,** mandatory local establishment of apprenticeship training; **Art. XXIV, Sec. 1,** requiring financial reporting by local financial secretaries to International Financial Secretary; **Art. XXVI, Sec. 1–Sec. 20,** union offices, duties of those offices, and qualifications and procedures for obtaining those offices; and **Art. XXVII,** International Pension plan for local employees and officers.

(Pl.'s Brief in Opposition to Mot. to Dismiss, filed Doc. No. 4, at 5–7; Constitution, filed Doc. No. 3, Ex. 2).

Although defendants rely on *Childs v. Local 18, International Brotherhood of Electrical Workers,* 719 F.2d 1379 (9th Cir.1983), to support their contention that the employees of the International cannot be counted with Local 401 employees, plaintiff considers that case distinguishable, submitting that the International "controls every aspect of the Defendant Local 401's business, with the exception of the actual hiring of each and every employee." (filed Doc. No. 4, at 8). Plaintiff attempts to support this absolute control theory by pointing out that Local 401 employees participate in the International's pension plan and that the International arranges for required bonding of Local 401 members and employees. (filed Doc. No. 4, at 8).

In light of these provisions in the constitution, plaintiff considers this case distinguishable from *Childs v. Local 18, International Brotherhood of Electrical Workers,* 719 F.2d 1379 (9th Cir.1983), and argues that the "International controls every aspect of the Defendant Local 401's business, with the exception of the actual hiring of each and every employee." (Pl.'s Brief in Opposition to Mot. to Dismiss, filed Doc. No. 4, at 8). Even in consideration of the mandated structure governing the locals as promulgated by the International in its constitution, plaintiff has not established that Local 401 is either the agent of or a single entity with the International.

Proper analysis focuses more on the reality of the control, not necessarily the number and structure of the International's "regulations" that govern maintenance of a local charter. The constitution is better viewed as providing a structural framework for charters of the International, it does not, however, establish that for purposes of Title VII, the International exerts control over Local 401. The admittedly substantial list of regulations does not provide for day-to-day control of operations, nor does it provide, even theoretically, for the International's input into decisions to employ or terminate employees such as Ms. Shepherdson, central to the present case.

Under certain scenarios, the International may exert substantial if not complete control over Local 401. Those scenarios, as enumerated in the International constitution, require egregious circumstances which call for the International's revocation or suspension of Local 401's charter, or the International's supervision of the local. As acknowledged by defendant Dougherty, as a result of charter revocation or financial misconduct, the International could temporarily take control of Local 401. (Dougherty Dep. at 74–76, filed ·Doc. No. 10, Ex.). Mere contingencies, however, do not establish the International's actual control over Local 401, particularly with respect to employment and personnel decisions. The constitution does not address anywhere the International's potential input into Local 401's employment decisions. Moreover, Ms. Shepherdson does not contest that the International utterly lacked involvement in the employment and personnel decisions of Local 401.

Although Local 401 is clearly affiliated with the International and considered by the International to be a "subordinate body," Local 401 is an autonomous organization. Liability for the alleged conduct of Local 401 and Mr. Dougherty clearly cannot be imparted to the International by virtue of the language in the International Constitution, nor can Local 401 be considered a single entity with or agent of the International.

## 2. Shepherdson's Affidavit

Ms. Shepherdson stated in her affidavit that:

> at the close of each business day, Local 401 had to close its financial books with Defendant International Association of Bridge, Structural and Ornamental Iron Workers ("International") via communicating by computer an accounting of Local 401's receipts of monies into its general fund for each day.... As an employee of the Local 401, I was a member of a pension fund maintained by the International for subordinate local union employees.... Based upon my actual knowledge through telephoning or otherwise corresponding with the International, ... the International employed at least 15 persons for each working day of at least twenty calendar weeks in 1991.

(Shepherdson Aff. ¶¶ 13–15, filed Doc. No. 4, Ex. A).

Plaintiff's statements fail in furthering her argument that the International controls Local 401. As financial secretary treasurer, business representative, Dougherty's job responsibilities included the day-to-day management of Local 401. (Dep. at 6–7). This day-to-day management, as supported by plaintiff's own statements, shows that Local 401 acts independently from the International in hiring, supervising, and firing its own employees.

The International fails to exhibit any indicia of a controlling entity as provided in the case law and the NLRB test as adopted by several appellate courts. The International did not take part in the decision to hire or fire Ms. Shepherdson, or to hire the other employees of Local 401, and played no role in Dougherty's alleged misconduct which forms the basis of Ms. Shepherdson's suit. Therefore, this court lacks subject matter jurisdiction over plaintiff's asserted claim against the International due to the total lack of International involvement in the alleged discrimination and the lack of an employer-employee relationship between the International and Ms. Shepherdson.[10]

---

**10.** The International's true relevancy to this action stems from application of agency and single entity analysis in the context of questioning the court's subject matter jurisdiction over plaintiff's

The absence of the International's influence or control over Local 401 decisions prevents a finding that the International is a single entity with Local 401 or that the International and Local 401 have an agency relationship. (Mem. in Support of International's Mot. for Judgment, filed Doc. No. 9, at 11). Plaintiff did not establish that the International employees or the Fund employees should be counted as Local 401 employees in order to satisfy the jurisdictional threshold. The term "employer" as used in the statute and case law does not here encompass the International or the Fund, directly, or by way of agency or single entity theory, and Local 401, the actual employing entity, on its own did not employ directly the requisite fifteen employees. Therefore, plaintiff's Title VII claim against Local 401, Dougherty, and the International must be dismissed for lack of subject matter jurisdiction.

## VII. INTERNATIONAL'S MOTION FOR SUMMARY JUDGMENT

■ The International's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) and in the alternative for summary judgment pursuant to Federal Rule of Civil Procedure 56, (filed Doc. No. 9), is governed by a standard different from that governing a 12(b)(1) motion. Although I have determined, *sua sponte*, that plaintiff's claim against the International will be dismissed for lack of subject matter jurisdiction, I will take this opportunity to separately address the specific motion filed by the International and the additional material filed in support of that motion.

The International maintains that because it never employed plaintiff in any sense, it cannot be held liable for the alleged conduct of

claims. Some courts have disposed of a Title VII claim against an entity, such as the International, by granting a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) or by granting summary judgment pursuant to Federal Rule of Civil Procedure 56. However, the Court of Appeals for the Ninth Circuit in *Childs*, 719 F.2d 1379, dismissed for lack of subject matter jurisdiction the Title VII action as to both the local and international union. This I believe is the proper manner to dispose of the claim filed against the International.

Local 401 and Dougherty. Further, the International argues that "the passive involvement of an unnamed International Association Vice President alleged in the complaint cannot as a matter of law support any claim against the International." (International's Mem. in Support of Mot. for Judgment, filed Doc. No. 9, at 2). Although afforded ample opportunity, plaintiff has filed no pleading, brief or other response to the International's motion for judgment. (filed Doc. 9). The order of December 23, 1992, (filed Doc. 6), permitted discovery on all jurisdictional motions to continue until March 30, 1993, and provided that any additional submission could be filed by April 15, 1993. Plaintiff has filed nothing of record since December 15, 1992, when she filed the brief in opposition to Local 401's motion. (filed Doc. 4). On May 10, 1993, the International filed a motion entitled, "Motion of Defendant International Association for a Ruling Granting Uncontested Motion for Judgment on the Pleadings or, in the Alternative, for Summary Judgment," (filed Doc. No. 11), in which the International asserts that pursuant to Local Rule 20(c) I should grant its motion for judgment as uncontested.[11]

Federal Rule of Civil Procedure 12(c) provides:

If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed.R.Civ.P. 12(c). Affidavits, deposition testimony, and exhibits appended thereto, being matters outside of the complaint, have

11. Under Local Rule 20(c):

[A]ny party opposing [a] motion shall serve a brief in opposition, together with such answer or other response as may be appropriate, within ten (10) days after service of the motion and supporting brief.... In the absence of timely response, the motion may be treated as uncontested.

been presented and considered in reaching a decision on the International's motion, and plaintiff has been given reasonable opportunity to respond to the International's motion for judgment on the pleadings and in the alternative for summary judgment. Therefore, I will rule on the International's alternative motion for summary judgment.

### Standard

A motion for summary judgment is appropriate only when there is no genuine issue of material fact, and one party is entitled to judgment as a matter of law. *Williams v. Borough of West Chester*, 891 F.2d 458, 463–64 (3d Cir.1989). In a motion for summary judgment, the court may examine evidence beyond the pleadings. The court must always consider the evidence, and the inferences from it, in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962); *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir.1987); *Baker v. Lukens Steel Co.*, 793 F.2d 509, 511 (3d Cir.1986). If a conflict arises between the evidence presented by both sides, the court must accept as true the allegations of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). For a dispute to be "genuine," a reasonable jury must be able to return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

### Affidavit of Leroy E. Worley

In support of its motion, the International submitted the affidavit of Mr. Worley, General Secretary of the International since February, 1989. (Worley Aff. ¶ 1, filed Doc. No. 9, Ex.). Mr. Worley acknowledged that the International constitution governed the operations of the International and its relationship with affiliated local unions. (Worley Aff. ¶ 4).

He further described the relationship between the International and Local 401, stating that the affiliated local unions

are autonomous bodies that largely conduct their own affairs without contact with or need for approval by the International Association. For example, each local un-

ion is entirely responsible for electing its own officers; hiring, supervising and firing its own employees; handling its own finances and property; and conducting its day-to-day operations. The International Association plays no role in these decisions by local union officers and members.

(Worley Aff. ¶ 5). Moreover, Mr. Worley maintained that the International had no role in hiring or discharging Ms. Shepherdson. (Worley Aff. ¶ 6). This assertion is nowhere disputed by plaintiff, and in fact plaintiff states that she was hired by Local 401. (Shepherdson Aff. ¶ 2, filed Doc. No. 4, Ex. A).

### Ms. Shepherdson's Complaint & Affidavit

Although Ms. Shepherdson did not file any response to the International's motion for summary judgment, she did file an affidavit in response to Local 401 and Dougherty's motion to dismiss, and asserted argument in her response to defendants' 12(b)(1) motion applicable to the International's motion for judgment. Plaintiff also filed a copy of the International's Constitution, as did the International. (filed Doc. No. 4, Ex. B; International's Mot. for Judgment, filed Doc. No. 9, Ex. A to Worley Aff.). Even considering plaintiff's arguments and previously filed affidavit in ruling on the International's motion for summary judgment, the International is entitled to judgment as a matter of law.

Ms. Shepherdson's affidavit provided little information concerning the International. Her complaint alleges that Local 401 hired her, with no mention of the International taking part in her employment. (Complaint, ¶ 9). Other than bald assertions that the International controlled Local 401 based on the International constitution and on the fact that she reported financial information to the International, her only allegation against the International is that she informed an unnamed official of the International about Dougherty's harassment of her.

The lone allegation with respect to International's involvement concerning the alleged sexual harassment was that "[p]laintiff advised a Vice President of Defendant International ... of the nature of the sexual harassment by Defendant Dougherty and of her

objection to it." (Complaint, ¶ 13). Any inaction on the part of an unnamed International vice president does not render the International liable for the allegedly discriminatory acts of Local 401 or Mr. Dougherty. *Cf. Brenner v. Local 514, United Brotherhood of Carpenters*, 927 F.2d 1283 (3d Cir. 1991).[12]

As previously discussed with respect to subject matter jurisdiction, plaintiff's bare allegation that the International controls Local 401 cannot be supported by the evidence. Although plaintiff did not respond to the International's motion for summary judgment, plaintiff's response to Local 401 and Dougherty's motion to dismiss asserts that the International's Constitution establishes the International's control over Local 401. This position based solely on the language in the International's constitution is insufficient to prevent summary judgment in favor of the International. There is no credible evidence suggesting the International controlled Local 401 or suggesting that the International had anything to do with the hiring, firing, or alleged harassment of Ms. Shepherdson. Likewise there is no genuine dispute as to Local 401's actual control over its affairs and as to Local 401's actual employment of Ms. Shepherdson. Moreover, defendant-International's motion for summary judgment is uncontested. Therefore, even if I did not dismiss the action against defendant International for lack of subject matter jurisdiction, the International would be entitled to summary judgment.

## VIII. CONCLUSION

Plaintiff has failed to show that Local 401 had the requisite number of employees to establish jurisdiction over this action, and the motion by defendants, Local 401 and Dougherty, to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) will be granted. The International did not employ Ms. Shepherdson nor did it control Local 401 in such a manner as to render it liable under Title VII and therefore, the action against it will be dismissed. As there is no independent basis for jurisdiction over plaintiff's asserted state claims, this action will be dismissed in its entirety.

---

12. In *Brenner v. Local 514, United Brotherhood of Carpenters*, 927 F.2d 1283 (3d Cir.1991), which involved a suit brought against both a local and international union under section 301 of the National Labor Relations Act, 29 U.S.C. § 185, for breach of the duty of fair representation, the Court of Appeals for the Third Circuit affirmed the district court's grant of summary judgment in favor of the international union. Plaintiffs in *Brenner* argued that the international union's failure to "step in" constituted instigation, support, ratification, or encouragement of the alleged discriminatory behavior, and alternatively, that the international union's constitution created a duty to intervene. *Brenner*, 927 F.2d at 1289. The appellate court in rejecting plaintiffs' contentions, expressed concern over the effect that inferring such obligations from an international union's reservation of the ability to intervene would have on the maintenance of union locals' independence.